Glenn C. Smith, Appellant, *v.* Commonwealth of Pennsylvania, Pennsylvania State Horse Racing Commission, Appellee.

2

Argued January 9, 1975, before Judges KRAMER, WILKINSON, JR. and MENCER, sitting as a panel of three.

*Edward S. Finkelstein,* for appellant.

*James F. Cendoma,* for appellee.

OPINION BY JUDGE KRAMER, March 14, 1975:

This is an appeal by Glenn C. Smith (Smith) from an adjudication of the State Horse Racing Commission (Commission), dated May 16, 1974, which imposed a fine of $500 on Smith for alleged violations of Rules 7.02 and 11.05 of the Rules of Racing of the Commonwealth of Pennsylvania. Rule 7.02 provides that "[n]o horse in an overnight[1] shall be scratched without the approval of the stewards." Rule 11.05 provides that "[h]orses must be in the paddock at least 20 minutes before post time." On January 26, 1974, the Board of Stewards (Board) of the Penn National Race Track (Penn National) imposed a fine of $250 on Smith for alleged infractions of these rules. An appeal was taken to the Commission, and a hearing was held before a hearing examiner on April 24, 1974. The Commission affirmed the findings of the Board, and, in addition, increased the amount of the fine to $500.

Because of the approach we take to the disposition of this case, only a brief description of the events which occurred at Penn National on January 13, 1974 will be given here. Since many allegations of procedural error

---

1. Nowhere in the record is the term "overnight" explicitly defined.

are made by Smith, we will deal with each of them in turn and provide the relevant procedural facts in the appropriate sections of this opinion.

As to the events occurring at Penn National, Smith frankly admits that he intentionally violated the letter of the two rules set forth above. By way of justification, however, Smith contends that, due to the extreme weather conditions prevailing on the date in question, he could not, as a responsible trainer and horse owner, permit his horse, "Toeless Tom," to run in the eighth race at Penn National on January 13, 1974. The record indicates that the temperature on the morning of that date was ten degrees above zero, and there is sufficient evidence in the record to at least create a serious controversy about the fitness of the track for racing. Several other trainers testified either that they attempted unsuccessfully to withdraw their horses from races on that date, or that horses which actually ran returned with injuries which may have been caused by the hardness of the track.

Smith made considerable efforts to have his "scratch" of "Toeless Tom" approved by the track stewards. In addition to consulting with the stewards, he called the owner-manager of Penn National, and the Chairman of the Commission on the morning in question. All of his efforts were to no avail, and the stewards refused to allow Smith to withdraw his horse. Rather than risk injury to his horse, Smith chose to defy the rules, and the disciplinary action followed.

Our scope of review is governed by provisions of the Thoroughbred Horse Race Meeting Corporation statute (Horse Racing Act), Act of December 11, 1967, P.L. 707, §20, 15 P.S. §2662 (Supp. 1974-1975), and the Administrative Agency Law, Act of June 4, 1945, P.L. 1388, §44, as amended, 71 P.S. §1710.44.[2] Section 44 of the Administrative Agency Law describes our review as follows:

---

2. Section 51 of the Administrative Agency Law, 71 P.S. §1710.51(c), provides that agencies not enumerated in section 51

"After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of sections thirty-one to thirty-five inclusive of this act have been violated in the proceeding before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." (Footnote omitted.) *Norwood v. Commonwealth of Pennsylvania, State Horse Racing Commission,* 16 Pa. Commonwealth Ct. 219, 328 A.2d 198 (1974).

Smith raises nine separate questions relating to actions by the Commission, its staff personnel and its hearing examiner. Several of his contentions may be disposed of quickly.

Smith first contends that any action by the Commission in this case is invalid because the Chairman of the Commission was never confirmed by the Senate of Pennsylvania. He points to the Supreme Court's ruling in *Frame v. Sutherland,* —— Pa. ——, 327 A.2d 623 (1974), and argues, in effect, that *Frame* requires that all action taken by the Commission subsequent to the appointment of the Chairman is a nullity. It is sufficient answer to this argument to point out that, on its own terms, *Frame* in no way requires a retroactive application of its doctrine. We do not believe that the scope of the Supreme Court's opinion contemplates such an effect, and, even if it did, Smith does not even allege any specific date for the Chairman's appointment. *Frame* did not invalidate all appointments made without Senate confirmation— only those made while the Senate was adjourned but while the House of Representatives was still in session.

are still subject to sections 21, 47 and 50 of the Law. Section 47 provides that "where applicable acts of assembly are silent on the question of judicial review," action of an agency is reviewable in accordance with sections 41 through 44 of said Law.

Smith next argues that the hearing held before the examiner was "improper" in that the Commission never held an "official meeting" to set the hearing date or appoint the hearing examiner. The record contains "General Order No. 3 of 1974" of the Commission, bearing the names of two Commission members, and this document appears to duly appoint Peter V. Pagano as hearing examiner. There is no evidence in the record which allows us to conclude that Mr. Pagano was not duly appointed. As to the setting of the hearing date, it is true, as Smith alleges, that the record contains no formal order of the Commission designating April 24, 1974 as the date for Smith's hearing. The April 24th date, however, is recited in the "General Order" which appointed Mr. Pagano, and the record clearly establishes that Smith's counsel was in fact notified of the time and place of the hearing by the Commission's Counsel. Thus, we find no merit in Smith's second contention.

Smith's third issue involves the conduct of the General Counsel of the Commission. He alleges that the Commission's Counsel not only prosecuted the case before the hearing examiner (which is indisputable), but also authored the Commission's adjudication and, in effect, made the decision for the Commission. As evidence in support of this allegation, Smith points out that the adjudication and order contains the Counsel's original signature and only facsimilies of the signatures of two Commission members. He also alleges that the transcript of the testimony taken before the hearing examiner was prepared by the hearing reporter only one day before the adjudication was issued, suggesting that the adjudication itself was prepared some time in advance of the typing of the record. Such advance preparation, Smith suggests, was done by the Commission's Counsel.

As we noted in *Donnon v. Downington Civil Service Commission,* 3 Pa. Commonwealth Ct. 366, 367, 283 A.2d

92, 93 (1971), in our system of administrative law we frequently find individuals or governmental bodies in overlapping roles as investigator, complainant, prosecutor, and judge. The question of just how far this multiple role can go without prejudicing a citizen's rights is, as we pointed out in *Donnon*, a "very delicate" question. We are also cognizant of the problem faced by an appellant in Smith's position, who believes himself the victim of misconduct occurring after the closing of a reviewable record. If the circumstances surrounding the issuance of the adjudication in this case are as Smith alleges, the Commission's Counsel may indeed have run afoul of constitutional provisions guaranteeing due process of law, as well as provisions in the Horse Racing Act which confer the authority to take certain actions only on the *Commission. See* e.g., section 12 of the Horse Racing Act, 15 P.S. §2662 (Supp. 1974-1975). We are, however, without any means of determining the extent, if any, of the Counsel's involvement in the decision-making processes of the Commission, except for conjecture, which cannot serve as the basis for an appellate court decision.

Having disposed of these preliminary matters, we are now faced with several other serious issues raised by what is, quite frankly, a record of shoddy conduct by the Commission and its staff. The adjudication of the Commission states that "[d]espite 265 pages of testimony, there is little else to be found in the reading of the same, but the fact that the appellant has violated Rules 7.02 and 11.05 of the Rules of Racing of the Commonwealth of Pennsylvania as charged." This statement begs the question. Smith admitted violating the letter of the two rules. He was appealing to the Commission on the basis that he was justified in committing the apparent violations, and that the stewards had abused their discretion. There can be no question that the stewards exercise discretion. For example, if a horse comes up lame on the morning of a race, obviously the stewards should allow

a "scratch," since the Commission would not sanction deceiving the public by the running of a lame horse. Thus, the Rules cited above are not absolute, for the reason that the stewards have the power to permit exceptions.

The most serious problem we find with these proceedings—though by no means the only one—is caused by the issuance of the adjudication less than 24 hours after the typing of the transcript of the testimony taken before the hearing examiner. Section 12 of the Horse Racing Act, 15 P.S. §2662 (Supp. 1974-1975) empowers the *Commission* to levy fines, but this power can be exercised *by the Commission,* only after a fair hearing, conducted in accordance with the Administrative Agency Law. Section 31 of the Administrative Agency Law, 71 P.S. §1710.31, provides that no adjudication shall be valid unless such a hearing is afforded. It taxes our imagination when we are asked to believe that the full Commission could have seriously considered a record of 304 pages, including 27 exhibits and the testimony of 11 witnesses in the one day that elapsed between the typing of the transcript by the hearing stenographer and the issuance of the adjudication of the Commission. In addition to the review of this two volume record, the Commission would have had to approve a draft of its adjudication and prepare it for filing during this same day. It is true that there is no record evidence that the stenographer did in fact finish preparation of the transcript on May 15, 1974, but at oral argument before this Court, Commission's Counsel frankly admitted that Smith's version of the time sequence was correct, and we believe such an admission provides a proper basis for consideration of this fact in our decision.

The right to a fair hearing, which is guaranteed to Smith by the Administrative Agency Law, and the Constitution of the United States is rendered meaningless if the Commission can make an adjudication without a

serious review of the evidence presented both for and against the appellant. *Merlino v. State Police Court Martial Board,* 7 Pa. Commonwealth Ct. 631, 635-36, 301 A.2d 106, 108-109 (1973). As indicated by our reference to *Donnon, supra,* our citizens' rights are sometimes precariously balanced when a single administrative agency controls both the prosecutorial and adjudicative machinery. Those rights would be tenuous indeed if we permitted the duly authorized decision-making authority to levy (and double) a fine without adequately considering the entire record, including the testimony and exhibits.

As our Supreme Court said in *Foley Brothers, Inc. v. Commonwealth,* 400 Pa. 584, 591, 163 A.2d 80, 84-85 (1960):

"It is obviously advisable, when the legislative command is to hear and determine, that these who decide should hear substantially all of the testimony, except where the delegation of the hearing power to a master or auditor is proper. *But the important thing is that they who decide must consider all of the evidence.*" (Emphasis added.)

The United States Supreme Court, in *Morgan v. United States,* 298 U.S. 468, 481-82 (1936), also recognized the importance of requiring a thorough consideration of the evidence in an administrative proceeding:

" 'The one who decides must hear.

" 'This necessary rule does not preclude practicable administrative procedures in obtaining the aid of administrative assistance in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. *But there must be a hearing in a substantial sense. And to give the substance of a hearing which is for the purpose of making determinations*

*upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them.'* " (Emphasis added.)

Smith next raises a somewhat related question regarding the denial of an opportunity to file a brief. Section 33 of the Administrative Agency Law, 71 P.S. §1710.33, provides that "[a]ll parties shall be afforded opportunity to submit briefs prior to adjudication. Oral argument upon substantial issues may be heard by the agency." The record clearly reveals that Smith's counsel specifically requested leave to file a brief. Several pages of the transcript of the hearing before the examiner are devoted to a rather lengthy discussion of this matter, and, at one point, Smith's counsel indicated that he would deliver a brief to the Commission "five days from the time the record is filed with the Commission." In response to the request for leave to file a brief, the examiner stated to Smith's counsel: "Why don't you file it within five days or whatever it takes to present it the way you would like it presented to the Commission." It is true, as the Commission points out in its brief, that 22 days had elapsed from the April 24, 1974 hearing when, on May 16, 1974, the Commission's adjudication was filed. It is also true that Smith never filed a brief, and that there was no formal refusal to accept any brief on the part of the Commission.

The right to file a brief is not a meaningful right if it must be exercised prior to counsel's having access to a transcript of any testimony which is to be considered by the decision-making body. If the transcription of the testimony was completed on May 15, 1974, and the adjudication was filed on May 16, 1974, it was obviously impossible for Smith's counsel to effectively write a brief in behalf of his client, and, consequently, Smith's right has been effectively abridged.

In *Bengal and Youngwood Pharmacy v. State Board of Pharmacy*, 2 Pa. Commonwealth Ct. 347, 349, 279 A.2d

374, 375 (1971), Judge WILKINSON observed that "[n]othing could be clearer than the mandatory provision of the Administrative Agency Law with regard to briefs." Our opinion in *Bengal* controls the instant case on this issue, as the following passages indicate:

"In many cases, and in this case particularly, less than the full Board is present at the hearing. *The only opportunity that the law requires be afforded the appellant to plead his case to the very people who will decide it, i.e., the State Board of Pharmacy, is by brief since some of the Board members were not present at the hearing* . . . the opportunity to file briefs is not only a statutory requirement but, in the alternative, a constitutional due process requirement.

\* \* \*

"According to appellant, undenied by the record or by appellee, following the hearing on August 6, 1969, the appellant made the usual routine request that he be notified by the reporter when the testimony was transcribed and filed. Appellant asserts, again undenied by the record or otherwise, that the next word he received was on December 10, 1969 that the adjudication and order had been filed on October 20, 1969! . . . The Board does not provide, by rule or otherwise, a time limit within which briefs must be filed. If it did, it would seem that *prudence would dictate that the time would begin with the date on which the parties are notified that the testimony has been transcribed and filed.* We commend to the consideration of the Board the adoption of such a procedure. *Without such a procedure, in order for the right to file a brief to be meaningful, the record must show that the appellant had been notified that the Board was in a position and was about to make its decision without a brief from appellant.*" 2 Pa. Commonwealth Ct. at 349-351, 270 A.2d at 375-76. (Emphasis added.) (Citations omitted.)

*See also Sharp's Convalescent Home v. Department of Public Welfare,* 7 Pa. Commonwealth Ct. 623, 300 A.2d 909 (1973) and *Klink v. Unemployment Compensation Board of Review,* 5 Pa. Commonwealth Ct. 62, 289 A.2d 494 (1972).

Smith next contests several evidentiary matters, and we point out at the outset of this discussion, that we recognize that neither the Commission, nor its examiner is bound by technical rules of evidence. *See* section 20 of the Horse Racing Act, 15 P.S. §2670 (Supp. 1974-1975) and section 32 of the Administrative Agency Law, 71 P.S. §1710.32.

Smith subpoenaed several Commission staff members to testify and to appear for the purpose of taking depositions. The subpoenas also attempted to compel the production of certain documentary evidence which Smith believed was in their possession. The record shows that all of the subpoenas were not honored. This result followed, in part, from the advice of the Commission's Counsel, who, by letter to Smith's counsel, stated that he could find no provision in the law which "authorized" Smith's attorney to secure evidence in this manner.

The subpoenas involved in this case appear in the record and, on their faces, command compliance with their terms by the authority of the Commission itself. *They are Commission subpoenas,* undoubtedly issued pursuant to the powers conferred upon the Commission by section 1 of the Horse Racing Act, 15 P.S. §2651 (Supp. 1974-1975). That section reads, in pertinent part:

"The commission, or such officers, employes or agents of the commission as may be designated by the commission for such purpose . . . may issue subpoenas to compel attendance of witnesses, and the production of all relevant and material reports, books, paper, documents, correspondence, and other evidence."

In addition to this statutory provision, a rather detailed set of regulations dealing with subpoenas *and* depositions is found in 1 Pa. Code §35.142-35.152, and it should be noted that 1 Pa. Code §31.1 provides, *inter alia,* that these rules govern practice and procedure before all agencies of the Commonwealth unless there is an *inconsistent* statutory provision, or the agency in question has duly promulgated its own *inconsistent* regulations. The Commission cites us to no such inconsistent provisions. The power to utilize subpoenas is, of course, subject to certain limitations, but, in light of the disposition which we will make in this case, it is unnecessary for us to comment on any particular objections which might have been made regarding the propriety of any individual subpoena. The record shows sufficiently that the Commission, through its Counsel, effectively attempted to thwart the use of this device by Smith as a matter of general policy, and this was error.[3]

In addition to his problems with compelling the production of evidence, Smith also complains of the actions by the hearing examiner in admitting hearsay evidence offered by the Commission, and in excluding certain of his own evidence on the basis of irrelevancy.

We have held numerous times that the hearsay rule is not a "technical rule of evidence," to be lightly disre-

---

3. The letter from the Commission counsel to Smith's counsel which was noted above reads as follows:

"Dear Mr. Finkelstein:

"It has come to my attention that you have served subpeonas [sic] on certain Commission personnel for the purpose of taking depositions on the above stated matter on April 8, 1974.

"Be advised that I find no where [sic] in the Racing Act, the Rules and Regulations of the State Horse Racing Commission or the State Administrative Agency Law which permits or authorizes this procedure especially without any reasonable notice to counsel involved. I have therefore advised said Commission personnel that they are not required to appear in obedience to said subpeonas [sic]."

garded by administrative tribunals. *See City of Pittsburgh v. Workmen's Compensation Appeal Board,* 12 Pa. Commonwealth Ct. 246, 315 A.2d 901 (1974);; *Bleilevens v. Commonwealth of Pennsylvania, State Civil Service Commission,* 11 Pa. Commonwealth Ct. 1, 312 A.2d 109 (1973) ; and *Lipshutz v. Unemployment Compensation Board of Review,* 8 Pa. Commonwealth Ct. 257, 303 A.2d 231 (1973). At one point in the proceedings before the examiner in the instant case, the Commission offered a written statement by the Penn National Assistant Superintendent which purported to describe the track conditions at Penn National on January 13, 1974 (the day in question). Since Smith's defense depended upon a finding that the track was in poor condition, the evidence obviously cut to the heart of the case. Smith's counsel objected to the evidence, alleging that it constituted hearsay, and that its admission denied him the opportunity to cross-examine. Smith's counsel attempted to explain our holding in *City of Pittsburgh, supra,* and the basic concept of hearsay testimony, at which point the following colloquy took place:

"THE HEARING OFFICER: *Okay, once again I am going to tell you I am not a judge. I am not here to judge or give rulings. I am only here to give testimony so it can be reviewed by the Commission.*

"MR. FINKELSTEIN: You don't understand your position.

"THE HEARING OFFICER: I understand—

"MR. CENDOMA: I object to him arguing with the Examiner.

"THE HEARING OFFICER: I want all of the facts. If this is pertaining to the exhibits, I want them. I would like to read them.

"MR. FINKELSTEIN: The law of Pennsylvania is that you are not entitled to hear and see certain facts. They are not facts unless we have the opportunity to cross examine the witness and bring out on

the record, you know, both sides of that issue and, here, Mr. Bowers' report. Unless Mr. Bowers is going to be here to testify to that report so I can cross examine him, it will be improper to have you have that evidence when I don't know if it's true or false.

"THE HEARING OFFICER: It's my understanding Mr. Bowers deals with Mr. Caplan and the fact that they get conditions every day so he would be qualified basing his judgment. This is a hearing where Mr. Bowers obviously sends letters every day on track conditions. That has nothing to do with this. We are talking about existing track conditions on January 13th and I would like him to continue." (Emphasis added.)

This exchange occurred early in the proceedings, and numerous other passages appear, all of which indicate that the examiner in this case misunderstood even the admittedly limited role he had in passing on evidentiary matters.

That the examiner's actions fell short of the standard we expect in cases such as this is also exemplified by numerous instances where evidence offered by Smith was excluded. As we noted above, we are aware that technical rules of evidence do not bind an administrative tribunal, and, of course, the fact that we might disagree with any particular ruling made by the examiner on a question of relevancy is no reason to reverse the Commission. This record, however, is rife with rulings which are, quite frankly, inexplicable. They raise serious questions regarding the abuse of discretion by the examiner.

For example, Smith's counsel was prevented from examining his client (who had 30 years of experience as a trainer) regarding direct observations he made of several horses which returned limping from races on the day in question. This testimony would have clearly been relevant. Smith was also prevented from answering when his counsel asked if he had been harassed by employes of

the Commission; and later, he was prevented from introducing evidence which allegedly indicated that, at another nearby track, the stewards allowed as many as 17 horses to "scratch" because of adverse weather conditions. Both of these latter items would be relevant to proving an abuse of discretion or arbitrary and capricious action on the part of state officials. Whether any of the evidence described above would have proven anything is, of course, not within our power to decide, for we are not permitted to find facts at the appellate level. These and other examples in the record, however, do cast a serious doubt on the essential fairness of the hearing in this case, and that is a matter with which we are compelled to be concerned. The hearing examiner occupies a critical role in our system of administrative law, and it is in large measure his responsibility to insure that proceedings before him are conducted fairly and with due consideration of litigants' basic rights. Our careful review of this record permits us to conclude that this responsibility was not adequately discharged in this case.

The final question raised by Smith concerns the action of the Commission in doubling the original penalty imposed by the Penn National Board of Stewards. In light of the disposition we make of this case, it is unnecessary to deal with this contention in detail. We merely point out that as long as the penalty, as increased by the Commission, does not rise to the level of an abuse of discretion, it must be affirmed. We have specifically approved increased penalties in *Lanchester v. Pennsylvania State Horse Racing Commission,* 16 Pa. Commonwealth Ct. 85, 325 A.2d 648 (1974) and *Poisson v. State Harness Racing Commission,* 5 Pa. Commonwealth Ct. 20, 287 A.2d 852 (1972).

The above opinion makes it abundantly clear that this case was conducted in a far from exemplary fashion. The record in this case contains reference after reference, made by the Commission's Counsel, to the fact that

Smith could appeal to the Commonwealth Court if he objected to the conduct of the proceedings below. The point here is not whether a citizen has a right of appeal to this Court, but rather that the Commission and its staff have a duty to properly carry out their adjudicatory function, so as to render a just decision without the need for an appeal. We do not relish interfering with the adjudicatory role of the Commission, and our opinions show that we rigidly adhere to our limited scope of review in administrative appeals. We cannot, however, overlook the errors committed in this case, most of which would not have been made if the Commission and its staff had realized that they also have a responsibility to guarantee due process of law. Because of the state of this record, and the nature and frequency of the errors cited in this opinion, we must reverse the Commission's order. *Gardner v. Repasky*, 434 Pa. 126, 252 A.2d 704 (1969). We therefore

ORDER

AND NOW, this 14th day of March, 1975, it is hereby ordered that the order of the Pennsylvania State Horse Racing Commission, dated May 16, 1974, imposing a fine of $500.00 on Glen C. Smith, is reversed.