The Board of Public Education of the School District of Pittsburgh, Petitioner *v.* William L. Pyle, Respondent.

Argued May 5, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and BLATT, sitting as a panel of three.

*Persifor S. Oliver, Jr.,* Assistant Solicitor, with him *Justin M. Johnson,* Solicitor, for petitioner.

*Henry L. Miller,* with him *Marjorie H. Matson,* for respondent.

Opinion by Judge Crumlish, Jr., September 5, 1978:

The Board of Public Education of the School District of Pittsburgh (Appellant/Board) has appealed an order of the Secretary of Education (Secretary) reversing its discharge of William L. Pyle (Appellee) and ordering his reinstatement.

During the course of approximately three years Appellant taught at three schools within the Pittsburgh School District, and received unsatisfactory performance ratings from the principals of each school. The first such rating was issued onMay 12, 1972, by the principal of the Oliver Senior High School. Appellee's performance was deemed to be unsatisfactory because of the use of profane language in the classroom, wrestling with a student and constant lateness. The second unsatisfactory rating was issued on May 23, 1974, by the principal of Schenley High School, who found that Appellee embarrassed pupils as a method of discipline; accidently hit another teacher in the face while swinging a broom at a student; boasted of sexual conquests to students; and made derogatory statements about a student's sister in the classroom. The third unsatisfactory rating was issued on May 20, 1975, by the principal of the Alderdice High School, who found that Appellee did not exhibit the temperament necessary for a public school teacher; Appellee was charged with engaging in physical confrontations with three different students, one of which resulted in the suspension of Appellee for one day without pay. This rating was approved on May 27, 1975, by the superintendent of schools who then issued the Final Unsatisfactory Rating and recommended Appellee's dismissal to the Board on the basis of incompetency. Appellee was notified of the pendency of the dismissal action. A hearing was held before the Board on July 14, 1975, and on

July 22, 1975, by a margin of 11-0, it voted for dismissal.

Appellee sought the Secretary's review of the Board's decision contending that his dismissal was improper for the following reasons:

1. The unsatisfactory ratings forming the basis for the dismissal were invalid;

2. The weight of the competent evidence was in his favor; and

3. The Board failed to give proper consideration to the evidence in its deliberations.

The Secretary agreed and sustained Appellee's appeal.

The Secretary found that the 1972 and 1974 ratings were invalid. The 1972 rating was deemed to be invalid because it was not approved by the superintendent of schools in accordance with Section 1123 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1123. The 1974 rating was found to be defective because it was approved by the superintendent of schools 13 months after it was issued, and not until after Appellee was recommended for dismissal. Additionally, the Secretary found a lack of substantial evidence to support the rating. The Secretary then concluded, relying on *Thall Appeal,* 410 Pa. 222, 189 A.2d 249 (1963), that the single valid unsatisfactory rating, issued in 1975, was insufficient to support Appellee's discharge. In *Thall, supra,* our Supreme Court held that two preliminary unsatisfactory ratings were necessary before a final unsatisfactory rating could be made.

Shortly after the Secretary's ruling, we handed down our decision in *The Board of School Directors of the Centennial School District v. Secretary of Education,* 31 Pa. Commonwealth Ct. 307, 376 A.2d 302 (1977), dealing with the issue of whether two unsatis-

factory ratings *must* precede the dismissal of a professional tenured employee for incompetency. We noted that the *Thall* opinion preceded the passage of the Commonwealth Documents Law (Law), Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §1102 et seq., by approximately five years. That act requires the filing of all administrative regulations with the Legislative Reference Bureau; failure to so file will result in the invalidation of the regulation. *See* Sections 207 and 208 of the Law, 45 P.S. §§1207, 1208. In *Thall, supra,* the Court relied on a regulation issued by the Superintendent of Public Instruction requiring the issuance of two preliminary unsatisfactory ratings before the issuance of a final unsatisfactory rating. That regulation was never filed with the Legislative Reference Bureau in accordance with the Law. We there held that in the absence of regulations requiring the issuance of two unsatisfactory ratings as a basis for dismissal, only one unsatisfactory rating was necessary, and that Sections 1122 and 1123 of the Code control. Those sections provide, in pertinent part, as follows:

§11-1122. Causes for Termination of Contract

The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immorality, *incompetency,* intemperance, cruelty, persistent negligence, mental derangement, advocation of or participation in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe. . . .

§11-1123. Rating System

In determining whether a professional employe shall be dismissed for incompetency . . .

the professional employe ... shall be rated by an approved rating system which shall give due consideration to personality, preparation, technique, and pupil reaction, in accordance with standards and regulations for such scoring as defined by rating cards. ... Rating shall be done by or under the supervision of the superintendent of schools ... or a principal, who has supervision over the work of the professional employe. . . . . Provided, *That no unsatisfactory rating shall be valid unless approved by the district superintendent.* (Emphasis added.)

We agree that the failure of the superintendent to approve the 1972 rating in accordance with the Code resulted in its invalidation. We also agree that the superintendent waived his right to approve Appellee's 1973 rating by failing to act on it within a reasonable time.[1] There is, however, no question that the 1975 rating conformed with the requirements of the Code. That rating alone is sufficient to constitute a basis for Appellee's dismissal. *See Centennial School District, supra.*

The 1975 rating found Appellee's performance to be unsatisfactory in the areas of professional relationships, judgment, and habits of conduct. The anecdotal report accompanying that rating charged Appellee with being incapable of handling discipline problems, evidenced by the fact that he engaged in physical confrontations with pupils on three different occasions. The Secretary found a lack of substantial evidence for that rating because it allegedly was based wholly on

---

[1] The primary reason for issuing performance ratings is to determine whether an employee is adequately performing his duties and whether he should be either promoted to a higher position with additional duties or advised of any existing deficiencies that may be corrected. A 13-month delay in approving a performance rating certainly will defeat this purpose and is patently unreasonable.

hearsay evidence. This conclusion was error. Appellee at no time objected to the introduction of the 1975 rating. He, in fact, admitted to the confrontations and his own account of the circumstances surrounding each incident was considered in preparing the rating. Appellee was examined extensively at the hearing and had ample opportunity to rebut the evidence against him. Therefore, while a portion of the 1975 rating was based on hearsay testimony (*i.e.,* the statements of each pupil), we cannot say that it was *wholly* based thereon. It is well established that hearsay evidence supportive of other evidence may be admitted in proceedings before administrative agencies. *See Department of Public Welfare v. Malinsky,* 26 Pa. Commonwealth Ct. 193, 363 A.2d 863 (1976).

Finally, the Secretary, relying on *Smith v. Pennsylvania State Horse Racing Commission,* 18 Pa. Commonwealth Ct. 1, 333 A.2d 798 (1975), found that the Board failed to give proper consideration to the testimony and exhibits entered into evidence, and concluded that a reversal of the Board's decision was proper. We disagree.

In *Smith, supra,* the appellant was charged with violations of the Rules of Racing, to which he freely admitted. A fine was imposed by the Board of Stewards and appellant appealed to the Racing Commission. At a hearing before *an examiner,* the appellant established justifiable reasons for the violations. The transcript of the hearing was made available to the Commission the day before it issued its adjudication where it affirmed the finding of the Board of Stewards and stated that nothing more was to be found in the record other than a violation of the rules. We reversed on due process grounds, stating:

It taxes our imagination when we are asked to believe that the full Commission could have se-

riously considered a record of 304 pages, including 27 exhibits and the testimony of 11 witnesses. in the one day that elapsed between the typing of the transcript by the hearing stenographer and the issuance of the adjudication of the Commission. In addition to the review of this two volume record, the Commission would have had to approve a draft of its adjudication and prepare it for filing during this same day.

18 Pa. Commonwealth Ct. at 8, 333 A.2d at 802.

Although the record here was made available only one day before the Board met to consider Appellee's dismissal, this case is factually distinguishable from *Smith, supra*. In *Smith,* no one on the Commission was afforded the opportunity either to hear testimony or adequately review the evidence before rendering its adjudication. Here, the testimony presented on appeal was heard by nine of the Board's 15 members, not merely by a lone hearing examiner. The resolution calling for Appellee's dismissal was prepared during the seven-day period between the dismissal hearing and the Board meeting by those Board members who were intimately aware of the facts. Seven of the nine Board members participating in the dismissal hearing attended the Board meeting. Four additional members who did not take part in the hearing were also present. By a vote of 11-0, the Board decided to dismiss Appellee.

Section 1129 of the Code, 24 P.S. §11-1129, governs the requirements of a dismissal vote by the Board and states in relevant part:

§11-1129. Vote required for dismissals

After fully hearing the charges or complaints and hearing all witnesses produced by the board and the person against whom the charges are pending, and after full, impartial

and unbiased consideration thereof, the board of school directors shall be a two-thirds vote of all the members thereof, to be recorded by roll call, determine whether such charges or complaints have been sustained and whether the evidence substantiates such charges and complaints, and if so determined shall discharge such professional employe. If less than two-thirds of all of the members of the board vote in favor of discharge, the professional employe shall be retained and the complaint shall be dismissed.

It was not proved nor can we assume in these circumstances that the four Board members who did not participate in the dismissal hearing did not give a "full, impartial and unbiased consideration" to the record produced before the Board.

Accordingly, we

ORDER

AND Now, this 5th day of September, 1978, the decision of the Secretary of Education is hereby reversed and the decision and order of the Board of Public Education of the School District of Pittsburgh is reinstated.