Keystone Chapter of Associated Builders and Contractors, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Department of Labor and Industry, Respondent.

Argued March 11, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, CRAIG, MACPHAIL and WILLIAMS, JR. Judge BLATT did not participate.

*Stephen J. Weglarz,* with him *Susan R. Friedman,* for petitioner.

*Daniel R. Schuckers,* with him *Neil L. Hirsch,* Assistant Attorneys General, for respondent.

*Jerome H. Gerber, Handler and Gerber, P.C.,* for Building and Construction Trades Council, intervenor.

*Edward C. First, Jr.,* with him *Jason S. Shapiro, McNees, Wallace & Nurick,* for Mechanical Contractors Association, amicus curiae.

*Miles J. Gibbons, Jr., Morgan, Lewis & Bockius,* for The General Contractors Association of Pennsylvania, amicus curiae.

*John S. Hayes,* with him *Richard H. Greenberg, Hayes and Feege, P.C.,* for Lehigh Valley Contractors Association, Inc., amicus curiae.

*F. Warren Jacoby,* with him *Dennis A. Martin, Jacoby, Donner and Jacoby,* for Penn-Del-Jersey Chapter National Electrical Contractors Association, amicus curiae.

OPINION BY JUDGE MACPHAIL, May 30, 1980:

The Keystone Chapter of Associated Builders and Contractors, Inc. (Petitioner) is appealing an order of

the Prevailing Wage Appeals Board (Board), which affirmed a final prevailing wage determination entered by the Secretary of Labor and Industry (Secretary), adopting the decision of the hearing examiner in a petition for review of the predetermination for the project "Additions to Solanco Senior High School, Lancaster County, Pennsylvania."

On October 4, 1978, the Solanco School District in Lancaster County filed a request with the Secretary for a predetermination of general prevailing minimum wage rates for inclusion in the specifications of its construction project. The Department of Labor and Industry (Department) promptly issued the predetermination in accordance with Section 7 of the Pennsylvania Prevailing Wage Act (Act), Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §165-7. Subsequently, Petitioner filed a petition for review of the predetermination under Section 8 of the Act, 43 P.S. §165-8. At that point in the proceedings, the Pennsylvania Building and Construction Trades Council, AFL-CIO (Intervenor) was permitted to intervene. Hearings were held on November 13, 28, 29, and 30, and December 1, 1978, before a Department hearing examiner appointed by the Secretary.

At the hearings, Petitioner and Intervenor were permitted to present testimony and documentary evidence, and were given the opportunity to examine and cross-examine witnesses concerning prevailing wage rates. The Petitioner's evidence mainly consisted of (1) two computer print-outs, which allegedly indicated the number of men and hours worked at a certain hourly rate in various crafts or classifications in Lancaster County, and (2) the raw data on which the print-outs were based. The raw data, which additionally indicated type and location of construction projects, was compiled by college students under the direction of a Professor Kasperson.

Intervenor's evidence was composed of collective bargaining agreements and forms prepared by contractors and union representatives. This evidence included the hourly pay and fringe benefit rates purportedly paid on construction projects in Lancaster County, and also indicated the number of hours and workmen paid at each rate and the location and type of construction project.

After completion of the hearings and consideration of the evidence, the hearing examiner issued a report recommending to the Secretary prevailing minimum wage rates to be applied to the Solanco project. The Secretary adopted these rates and the Board affirmed the Secretary's decision. This appeal followed.

Our review of the Board's decision is limited by Section 704 of the Administrative Agency Law to determining whether "the adjudication is in violation of the constitutional rights of the appellant, or is not in accordance with law, or that the provisions of Subchapter A of Chapter 5 (relating to practice and procedure of Commonwealth agencies) have been violated in the proceedings before the agency, or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." 2 Pa. C.S. §704. In its appeal to this Court from the Board's order, the Petitioner raises numerous issues which are within our scope of review.

First, Petitioner contends that the Department has made an error of law in its interpretation of the statutory term "locality." Petitioner also makes the argument that the Act is unconstitutional on its face and in its administration, and as such denies Petitioner its constitutional right of equal protection. Furthermore, Petitioner alleges that its constitutionally-guaranteed right to due process has been denied in the proceedings before the Department. Lastly, Petitioner urges that the Department's findings are not supported by substantial evidence.

*Interpretation of Statutory Term, "Locality"*

Petitioner argues that the Board's conclusion that Lancaster County is the proper "locality" in determining a prevailing minimum wage rate for the Solanco project manifests the Board's ignorance of the clear statutory language of the Act. Section 7 of the Act provides in pertinent part that:

> The secretary shall ... determine the general prevailing minimum wage rate in the locality in which the public work is to be performed for each craft or classification of all workmen needed to perform public work contracts during the anticipated term thereof.

The term "locality" as used in the Act is defined in Section 2(2) of the Act, 43 P.S. §165-2(2):

> 'Locality' means any political subdivision, or combination of the same, within the county in which the public work is to be performed. When no workmen for which a prevailing minimum wage is to be determined hereunder are employed in the locality, the locality may be extended to include adjoining political subdivisions where such workmen are employed in those crafts or trades for which there are no workmen employed in the locality as otherwise herein defined.

Petitioner asserts that, correctly interpreted, the above sections of the Act require the "locality" to be "within the county;" in other words the "locality" may be any political subdivision or combination thereof with boundaries inside the county's boundaries. The "locality" may be expanded to the county or a larger area only when no workmen of a specific class are employed within the chosen "locality."

Petitioner argues that "Solanco School District" or "Quarryville," which is located in the center of the Solanco School District, should be designated the

"locality" on which the determination is based. Petitioner advocates the use of Quarryville because Quarryville is a political subdivision within which several complex, substantial commercial and industrial construction projects have been completed in the last two years requiring a large number of man-hours put in by non-union skilled workmen. Petitioner believes those skilled workmen performing in Quarryville are capable of the Solanco job.

Petitioner adds that its interpretation of the Act's language is consistent with the Act's purpose. Petitioner states that the purpose of the Act as well as that of the federal Davis-Bacon Act, 40 U.S.C. §276a et seq., after which the Pennsylvania Act is modeled, is to preserve jobs for the local workmen employed in the place where the public project is to be built. Therefore, Petitioner argues, the locality should first be determined on as small a geographical basis as possible — Quarryville in this instance.

We do not find Petitioner's arguments convincing. Nothing in the Act precludes the Secretary, hence the Board, from determining the "locality" to be Lancaster County. We interpret Section 2(2) of the Act to mean that the geographical area encompassing a political subdivision or combination of political subdivisions need not be less than the whole county, although a combination of political subdivisions may not initially overlap county lines. The Act vests the Secretary with discretion to determine the appropriate "locality." The legislature could have employed language to restrict the "locality," for example, to the place of construction, but instead it chose to allow the Secretary considerable flexibility. The practicality of the Secretary's designation of Lancaster County as the "locality" is demonstrated by Petitioner's own evidence, which is based on a survey of wages paid on construction projects throughout Lancaster County, and in Petitioner's

conclusions therefrom which are likewise made on a county-wide basis.

We find that designating Lancaster County as the "locality" is also consistent with the purpose of the Act as we construe it. The fundamental purpose of prevailing wage legislation is to protect the workmen employed on a government project from payment of substandard wages — keeping in mind that the lowest responsible bidder is customarily awarded public contracts. *United States v. Binghamton Construction Co.,* 347 U.S. 171 (1954). By guaranteeing such protection, the legislation helps to assure the employment of skilled craftsmen on the job. Since the Act's purpose is not to *preserve jobs* for local craftsmen, but to *assure* the local craftsmen who are employed *standard wages,* the local workmen in this case are afforded the wage protection with the prevailing wage rate based on Lancaster County in its entirety. Therefore, we hold that the Board made no error of law in affirming the Secretary's designation of Lancaster County as the "locality" for the purpose of determining the prevailing minimum wage rates for the Solanco project.

### Constitutionality of the Act and its Interpretation by the Department

Petitioner raises three issues concerning the constitutionality of the Act and its interpretation by the Department: (1) Petitioner alleges that the Act is facially unconstitutional in requiring that fringe benefits determined by collective bargaining agreements be incorporated into wage determinations. Petitioner contends that this requirement denies equal protection to non-union contractors and employees, because they do not make fringe benefit contributions to collective bargaining agreements. (2) Petitioner asserts that the Department's interpretation of "prevailing" to mean the most common single wage rate in the

locality also denies equal protection to the non-union segment of the construction industry, it being almost impossible for one specific dollar figure to ever prevail among non-union contractors and employees. (3) Petitioner also contends that the Department's administration of the Act requiring the establishment of "prospective" wage rates is unconstitutional, in that such an interpretation discriminates against non-union contractors, who do not set future wages for their employees.

In response to Petitioner's first constitutional challenge, we agree that the Act, under Section 7, does require that fringe benefits be included in any evidence consisting of wage rates set by collective bargaining agreements. Section 7 of the Act provides in part that "employer and employe contributions for employe benefits pursuant to a bona fide collective bargaining agreement shall be considered an integral part of the wage rate for the purpose of determining the minimum wage rate under this act." However, the Act does not *mandate* that the prevailing wage rates be determined solely by the rates in collective bargaining agreements, which include fringe benefits. The Secretary *may* ascertain and consider the wage rates and benefits set by collective bargaining agreements; but the Secretary also may consider other information, including that voluntarily submitted by *any* contractors and subcontractors, if presented in the required form. 34 Pa. Code §9.105.[1]

---

[1] 34 Pa. Code §9.105 provides:

(a) For the purpose of making a determination of the general prevailing minimum wage rates in the locality in which the public work is to be performed for each craft or classification during the anticipated term of the contract, the Secretary may ascertain and consider the wage rates and employe benefits established by collective bargaining agreements.

....

(c) The Secretary may also consider the following:

Collective bargaining agreements, therefore, are not the only source of information used by the Secretary to determine prevailing wage rates. If the collected data shows non-union construction to be the dominating segment of the industry, its wage rates should prevail as the general minimum wage rates for Lancaster County. In that instance fringe benefits would have no effect on the setting of the prevailing wage rates. However, if union contractors perform the majority of the construction work in the county, collective bargaining agreements shall and certainly should determine the prevailing wage rates. It is a proper legislative prerogative to mandate that fringe benefits included in a bargaining agreement should be considered as part of the total wage package paid the union employees because such benefits are considered a part of the wage package in the market place.

---

(1) Information obtained from Federal agencies charged with the administration of labor standards provisions of Federal Acts applicable to contracts covering contractors and subcontractors on public building and public work and on building and work financed in whole or in part by loans and grants of the United States, within the locality.

(2) The number of skilled, competent and experienced workmen within the locality who are generally available for employment on public work.

(3) Statements signed and certified by contractors and subcontractors and union representatives showing wage rates paid on projects, within the locality....

(4) Any other information pertinent to the determination of prevailing minimum wage rates.

(d) The Secretary shall conduct a continuing program for the obtaining and compiling of wage rate information and shall encourage the voluntary submission of wage rate data by contractors, contractors' associations, labor organizations, public officials, and other interested parties, reflecting wage rates paid to workmen in the various types of construction in the locality....

Petitioner's second argument is that the Department has not treated union and non-union contractors uniformly in its interpretation of "prevailing." Petitioner contends the Department effectively mandated the exclusive use of collective bargaining agreements to set the prevailing wage rate by interpreting "prevailing" as the most frequent or common wage rate. This identical argument of discrimination against non-union parties was raised by the non-union petitioner in the prevailing wage case of *Pennsylvania Associated Builders and Contractors, Inc. Appeal*, 93 Dauph. 98, 51 Pa. D. & C. 2d 246 (1970.[2]

In *Pennsylvania Associated Builders, supra*, this Court held that the petitioner's argument that collective bargaining agreements only had been considered by the Secretary was improperly based on the Secretary's original determination; for at the hearing prior to the Secretary's second determination, both union and non-union evidence was received for consideration. Similarly, in our case Petitioner and Intervenor presented at hearing evidence regarding the basis of the prevailing wage rates, all of which was considered by the hearing examiner and Secretary before the final determination was made. The Department granted Petitioner an equal opportunity to offer documentary evidence and testimony supporting its method of determining the prevailing rate and the figures at which it arrived. Thus the Department did not deny Petitioner equal protection. The Department acted within its legislatively authorized discretion in interpreting "prevailing" to mean "most frequent."

---

[2] Although the case is reported in the Dauphin County Reporter, it was a Commonwealth Court case (200 C.D. 1970) heard in the transition period when cases were being transferred from the Dauphin County Court of Common Pleas to the Commonwealth Court.

We cannot agree with Petitioner's third contention that the Department discriminated against non-union contractors, subcontractors, and employees when it accepted evidence of projected future wages. Petitioner states that since non-union parties do not set forth in writing future rates, the only evidence accepted is collective bargaining agreements which do include future wage increases. It must be noted that public contracts normally include substantial projects with extended completion dates. It is not unrealistic to believe that non-union parties also have to anticipate future increases in wages. Therefore, in their evaluation of the prevailing wages at the Department hearing, the non-union parties may and should at least offer estimates as to future wage rates. If wage increases are not anticipated when the Department sets the minimum wage rates, the wages on the public project will likely be kept lower than those that generally prevail in the industry—a result contrary to the purpose of the Act.

## Denial of Procedural Due Process

1. Petitioner bases its first claim of due process denial on the ground that the hearing examiner improperly ruled the hearing a "trial de novo." Undoubtedly the hearing examiner was relying upon this Court's characterization of the hearing in *Pennsylvania Associated Builders, supra,* where we said that "[t]he situation is not identical but is somewhat analogous to a Judge who grants a new trial after having made a decision at the first trial." *Id.* at 100, 51 Pa. D. & C. 2d at 249. The issue at the hearing before the examiner was not whether the Secretary erred in the determination of the wage rates issued on request when bids on the contract were solicited. Rather, the issue before the hearing examiner was whether those wage rates were, in fact, the prevailing minimum wages in the locality. The whole purpose of the public

hearing was to determine what those prevailing minimum wage rates should be. How or in what manner the Secretary made the initial determination was clearly irrelevant. Petitioner's appeal lies not from the predetermination of wage rates but from the final determination thereof. We conclude that the examiner's ruling on the nature of the proceeding was correct.

2. Petitioner next contends it was denied due process because the hearing examiner and Secretary could not completely and adequately have reviewed and considered the record, considering the enormity of the record and the extremely short time span between completion of the transcript of five days' testimony and the rendering of the decision. The final day of hearing took place on December 1, 1978, the examiner's report was filed December 8, 1978, and the Secretary's decision was issued ten days thereafter on December 11, 1978.

First, it must be observed that the Act required the Secretary to make a final determination within ten days of the hearing. The determination here barely made that deadline. Second, although the record was extensive, the Secretary took three days to review it and the hearing examiner's findings and conclusions. The determination was filed on the last day the Secretary could do so. We believe this is evidence that the Secretary did make a careful review of the record and of the hearing examiner's findings. Finally on this point, *Smith v. State Horse Racing Commission*, 18 Pa. Commonwealth Ct. 1, 333 A.2d 798 (1975), relied upon by Petitioner, is clearly distinguishable on its facts from the case now before us. In *Smith*, the Commission issued its final adjudication less than twenty-four hours after the typing of the transcript of a hearing over which a hearing examiner presided. That is far different from the case now before us.

3. Petitioner contends that the hearing examiner failed to set forth adequate findings of fact upon which her conclusions rest. We hold that the findings are adequate, following the Pennsylvania Supreme Court's guidelines in *Page's Department Store v. Velardi*, 464 Pa. 276, 346 A.2d 556 (1975), which require the adjudication to "include all findings necessary to resolve the issues raised by the evidence and which are relevant to a decision." *Id.* at 287, 346 A.2d at 561. The findings of the hearing examiner are also "sufficiently specific to enable the court in reviewing that action to pass upon questions of law." *Gottshall v. Batt*, 71 Dauph. 383, 399, 18 Pa. D. & C. 2d 137, 160 (1958).

4. Finally, Petitioner raises the due process argument that several procedural rulings by the hearing examiner deprived Petitioner of a full and fair hearing. We do not agree that Petitioner's right to reasonable cross-examination, guaranteed by Section 505 of the Administrative Agency Law,[3] has been denied. Though Petitioner has a right to cross-examination in the hearings, the extent of the cross-examination may be reasonably limited by the Department's hearing examiner. "The right to limit cross-examination has been recognized in Pennsylvania to be within the sound discretion of the trial judge and absent injury to the party complainant it is not grounds for reversal." *First National Bank of Pike County v. Department of Banking*, 7 Pa. Commonwealth Ct. 603, 607, 300 A.2d 823, 825 (1973). Our review of the record does not convince us that the hearing examiner abused her discretion in the conduct of the hearing.

---

[3] Section 505 of the Administrative Agency Law, 2 Pa. C.S. §505 provides in pertinent part:

Reasonable examination and cross-examination shall be permitted.

Petitioner also alleges that the hearing examiner has committed reversible error for placing arbitrary time limits on the hearings, for admitting the Intervenor's evidence without foundation, and for effectively denying Petitioner opportunity to submit briefs prior to adjudication. We find that the time limits placed on the hearing were reasonable and not arbitrary. We believe that the hearing examiner treated the Petitioner and Intervenor equally in her admission of evidence, for in many instances no foundation was laid for either party's exhibits. It was then the hearing examiner's duty to determine the credibility of the evidence.

Petitioner was given the right to file a brief in accord with Section 506 of the Administrative Agency Law.[4] Petitioner filed its brief on December 7, 1978. Petitioner was not prejudiced by the necessity of its filing a brief before the entire transcript was made available. The Intervenor was subject to the same conditions and the hearing examiner was well-appraised of Petitioner's arguments by virtue of Petitioner's argumentative approach to the hearings. Therefore, we find no denial of due process in the above situation.

### Department's Decision Not Based on Substantial Evidence

Petitioner makes its final argument that the findings and conclusions of the Department's final decision are not based on substantial evidence, and that the case should thus be remanded to the Secretary. First,

---

[4] Section 506 of the Administrative Agency Law, 2 Pa. C.S. §506:

All parties shall be afforded opportunity to submit briefs prior to adjudication by a Commonwealth agency. Oral argument upon substantial issues may be heard by the agency.

Petitioner contends that the Department erroneously incorporated parts of the Secretary's predetermination (which it had deemed irrelevant to the hearings) into its final decision. Because it was denied meaningful challenge to the predetermination, Petitioner argues the Department should not have utilized this evidence in reaching its conclusions.

Petitioner also asserts that the preponderance of the evidence presented by Intervenor is irrelevant under the requirements of the Department's own regulations, and thus the Department incorrectly based its decision on such evidence. Thirdly, it is Petitioner's belief that the hearing examiner and Secretary erred in giving Petitioner's survey such little weight.

Concerning Petitioner's argument that the Department erroneously incorporated parts of the Secretary's predetermination in its final decision, we note again that the purpose of the hearing was to determine from the evidence presented what the prevailing wage rates were in the locality. After that evidence was evaluated, if the Secretary's predetermination proved to be correct, of course those figures may be incorporated into the final determination and to do so was not error in the instant case. Moreover, in some instances the Secretary's predeterminations were not challenged by Petitioner.

It was within the Secretary's administrative discretion to determine how much weight to accord the testimony and various exhibits presented as evidence at the hearing. It was also within the Secretary's administrative discretion to rely more upon Intervenor's evidence than Petitioner's, because on the whole Intervenor's evidence was substantially competent and had no major flaws as did Petitioner's. Both parties introduced a number of exhibits which in some way did not comply with the standards of 34 Pa. Code

§9.105(c)(3),[5] *e.g.* failing to include names and addresses of contractors and subcontractors. However, Petitioner's evidence was given less weight by the Secretary because it did not list fringe benefit rates, it excluded public works projects and some major private projects, and it lumped together wage rates for 1976, 1977, and 1978, to establish wage rates for October, 1978. In contrast, Intervenor's evidence included fringe benefits, projects of every nature and clearly demonstrated prevailing wage rates for 1978. There was substantial evidence to support the Secretary's findings.

For all the above reasons, we affirm the order of the Prevailing Wage Appeals Board, which sustained the Secretary's prevailing minimum wage determination for Lancaster County.

## Order

And Now, this 30th day of May, 1980, the order of the Prevailing Wage Appeals Board, dated March 9, 1979, sustaining the final prevailing wage determination for the Solanco School project entered by the Secretary of Labor and Industry, is hereby affirmed.

---

[5] 34 Pa. Code §9.105(c)(3):

The Secretary may also consider the following:

(3) Statements signed and certified by contractors and subcontractors and union representatives showing wage rates paid on projects, within the locality, these statements to be relevant to a wage determination must indicate the names and addresses of the contractors, including the subcontractors, the locations, approximate cost, dates of construction and type of projects, the number of workmen employed and the number of man hours worked in each craft or classification on each project and the respective wage rates paid the workmen, which wage rates must consist only of rates paid for services performed solely within the classification for which it is submitted.