## Edinger v. Upper Makefield Township

*Robert L. White*, for plaintiff.
*Eric R. Tobin*, for defendant.

GARB, *P.J.*, January 5, 1983—This is a suit in assumpsit which was tried non-jury before the undersigned. On October 8, 1980 a verdict was entered in favor of defendant. Exceptions have been filed and argued before the court en banc. They are discharged.

Plaintiff is the former chief of police of Upper Makefield Township. He was so employed from approximately June 3, 1975 until April 20, 1979. The first year of that employment was pursuant to an employment contract executed on June 3, 1975.[1] A second contract was executed approximately one year later on August 6, 1976 and was in full force and effect until plaintiff terminated it by resignation effecitve April 20, 1979. Thereafter plaintiff instituted this law suit to recover $19,318.25 in overtime payments which he claims due him as well as $600 for dental costs and expenses which he claims due him as a fringe benefit. By our verdict we denied his right to recover these sums and we now reaffirm that determination.

Each of the employment contracts provided for

---

1. The first year of employment was denominated a "probationary period."

an annual salary. The first provided for $15,000 annually and the second for $16,500. Neither contract made any specific provision for overtime pay. The first contract was quite explicit in providing in paragraph 4 as follows:

"During the term of his employment Edinger shall devote his best efforts, and his entire time to the performance of the duties and obligations herein specified and shall be on call for such purposes twenty-four hours a day—it being understood that there is involved in this contract of employment no hourly rate of pay or required number of hours, but rather the daily supervision and administration of the department and the accomplishment of the purposes herein set forth."

Quite obviously this is an explicit provision negating any consideration of overtime pay.

The second contract provides in paragraph 6 as follows:

"During the term of this Agreement Edinger shall devote his best efforts and his *entire time* to advance the interests of the Township and the police force of the Township; *he may be called for duty at any time;* he shall train, organize, administer and supervise the police force of the Township; he shall with the resouces available to him provide the best possible police protection to the residents of the township; and he shall generally carry out the orders and requests of the Supervisors of the Township in all matters properly relating to the police." (Italics furnished.)

Although this does not contain the explicit language contained in the first contract regarding the question of hourly wage, we believe that this para-

graph together with the rest of this second contract implicitly rules out any compensation for overtime pay. The compensation set forth in this contract is stated in terms of an annnual salary with no breakdown to an hourly rate. Paragraph 6 of the second contract specifically provides that plaintiff may be called for duty at any time, and that he shall devote his entire time and makes no provision whatsoever for any special or additional pay for any time during which he may be so called.

In the absence of a special agreement as to additional compensation, or of evidence showing an intent to pay it, or of a uniform and notorious custom sufficient to show that the contract was made with reference thereto, an .employee may not recover compensation for extra work performed within the scope of his employment even if the extra work is done at the request of the employer. Pennsylvania Law Encyclopedia, volume 21, Labor Section 26. Overtime pay has been defined as payment or wages for work done calculated at a different rate than the basic wages: Aird v. United States, 116 F. Supp. 281 (E.D. Pa. 1953). Overtime has been defined to mean work beyond the regular fixed working hours. An overtime wage, therefore, is merely the portion of wages which is paid for the services rendered beyond those regularly fixed hours and is included in the all comprehensive term "wages." Goodman v. Moss, 43 N.Y.S. 2d 381 (1943). There is obviously no provision made in either of these contracts for any overtime salary or wage either on an hourly basis or on any other basis. Rather each contract provides for a specific annual wage and each calls for the full time endeavors of plaintiff. Although the language of the first contract may be more explicit, we are satisfied that the language of the second contract is sufficiently certain so as to find no

implicit or any other kind of contractual basis to support the payment of overtime pay.[2]

Plaintiff contends that he is entitled to this overtime pay as a "fringe benefit." The second contract in paragraph 3 in relevant part provides as follows:

". . . Edinger . . . shall in addition receive such fringe benefits as the Township may maintain in effect for police officers of the Township subject to the specific restriction that Edinger shall receive no uniform or clothing allowance, or vehicle or vehicle allowance during the term of this Agreement."

Paragraph 10 provides that Edinger shall receive all fringe benefits made available to other Township employees including 15 sick days per year, eight holidays per year, hospitalization, three personal days per year, and benefits under the township police pension plan.

Of course, fringe benefits are part of the compensation paid to any employee for the services he performs. For example, see Keystone Chapter of Associated Builders v. Commonwealth of Pennsylvania, _____ Pa. Commw. _____, 414 A. 2d 1129 (1980) and J.H. Welsh & Son Contracting Company v. Arizona State Tax Commission, 420 P. 2d 970 (Arizona 1967). However, in these contracts wages or salary and fringe benefits are separately denominated. Plaintiff argues that he is entitled to overtime as a fringe benefit and in support thereof refers to Resolution number 39 adopted by the Board of Township Supervisors on September 1, 1972. This

---

2. We do not believe that the disparity between the language in the first and second contract is a sufficient basis upon which to draw a negative inference that overtime pay was intended by the parties to be included as a provision of the second contract.

resolution provides for the various requirements and conditions of employment of policemen hired by the Township. The resolution contained 13 separate paragraphs or categories relating to employment of policemen and refers specifically to physical examinations, probationary period, type of employment, rate of pay, work schedule, vacations, holidays, equipment, pensions, life insurance, hospitalization, liability insurance, and outside employment. There is then one last section dealing with part time officers. Rate of pay provision is made for the salaries of police officers together with annual increases. Under work schedule it is provided that each police officer shall work a 40 hour week with overtime to be paid at time and one half of regular hourly base rate.

Plaintiff argues that all of the provisions of Resolution 39 should be read into and incorporated as part of his employment contract and therefore reaches for the overtime pay provided therein. However, we believe this argument to be without merit. Quite obviously all of the provisions of Resolution 39 cannot be denominated as so-called fringe benefits. For example a physical examination is required prior to employment. Furthermore it is provided that the first year of employment is a probationary period. In addition it is provided that any outside employment must be approved by the Board of Supervisors. Quite obviously these provisions are not "fringe benefits" as those terms have been defined as they certainly do not constitute some form of compensation for servies provided. Obviously, vacations, holidays, equipment furnished by the Township, pensions, life insurance, hospitalization, and liability insurance are fringe benefits because they represent emoluments or perquisites which themselves have value and for which the

employee is not required to pay. Vacations and holidays obviously have value because they are periods during which the employee is not required to work but for which he is paid. Two sections of the resolution deal directly with compensation or salary, the one being "rate of pay" which provides for the annual salary and annual increments thereto and the second being "work schedule" which provides for a 40 hour week and overtime at the rate of time and one half thereafter. These, obviously, are not intended to be "fringe benefits" strictly speaking but rather the terms of employment and the direct compensation to be paid therefor. Plaintiff's contract makes no provision whatsoever for a limited work week and none for overtime pay. The provision that he shall receive such "fringe benefits" as the township may maintain in effect for police officers refers to those items in Resolution 39 which strictly speaking, can be construed to be "fringe benefits." Once again those are such matters as vacations, holidays, equipment, pensions, life insurance, hospitalization and liability insurance.

In concluding we totally disbelieve and reject plaintiff's contention of an expectation of paymnet for overtime. During the time that he was employed by the township he made claim for overtime on only one occasion. That was a Saturday afternoon when he was required to replace an ill policeman and could not find any other replacement. On that occasion, and on that occasion alone, he approached the chairman of the Board of Supervisors and requested overtime pay for that tour of duty. On that occasion, and on that occasion alone, the Board of Supervisors approved payment of overtime. At no other time did he ever submit any request for overtime until after he had left the employ of the township.

We likewise believe that we were correct in

rejecting his claim for dental benefits. We rejected that claim because dental benefits were not offered by the township to its police officers. Obviously, dental benefits are not specifically provided for in plaintiff's contract. Paragraph 11 of Resolution 39 does make reference to a dental plan to be provided by the township. However, such a dental plan was never implemented and never provided by the township to any employees. In fact, it was plaintiff's advice to a township official that that matter be deleted from Resolution 39 so that the police officers would not expect it.

Plaintiff likewise claims certain payments for accrued vacation time at the time of his resignation. However, we believe that he has forfeited this benefit by virtue of his breach of the contract by failing to give the township 60 days' notice of his resignation as required by the contract.

For the foregoing reasons we are satisfied that our original verdict was correct and therefore that the exceptions must be dismissed.

### ORDER

And now, January 5, 1983, it is hereby ordered that the exceptions to the verdict of October 8, 1980 are denied, dismissed and overruled and it is ordered that judgment be entered on the verdict. Costs on plaintiff.