PENNSYLVANIA STATE BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL–CIO and its Affiliated Labor Organizations, Petitioners,

v.

COMMONWEALTH of Pennsylvania, PREVAILING WAGE APPEALS BOARD; and Commonwealth of Pennsylvania, Department of Labor and Industry, Respondents.

Commonwealth Court of Pennsylvania.

Argued May 6, 1998.

Decided Jan. 11, 1999.

Irwin W. Aronson, Philadelphia, for petitioner.

Richard C. Lengler, Harrisburg, for respondent.

Lawrence S. Coburn, Philadelphia, for intervenors, Southeast Pennsylvania, et al. Stanley B. Edelstein, Philadelphia, for intervenor, Mechanical Contractors Ass'n.

Before COLINS, President Judge, and DOYLE, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J., FLAHERTY, J., and LEADBETTER, J.

DOYLE, Judge.

The Pennsylvania State Building and Construction Trades Council, AFL–CIO, and its affiliated labor organizations (collectively, Council) appeal from a determination of the Department of Labor and Industry's Prevailing Wage Appeals Board (Board). The Board upheld a decision of the Secretary of the Department of Labor and Industry (Department or Secretary) to use the results of a statewide wage survey to determine prevailing minimum wage rates under the Pennsylvania Prevailing Wage Act (PWA), Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §§165–1—165–17, and its applicable regulations.[1]

Under the PWA, every public body that engages in the construction of a public work project must receive a determination from the Secretary as to the prevailing minimum wage rates to be paid to the workers employed on the project. Section 4 of the PWA, 43 P.S. §165–4. Traditionally, the Department had relied exclusively on collective bargaining agreements (CBAs) to set prevailing wage rates, as permitted by 43 Pa.Code §9.105(a). Criticism of this practice and a recommendation from the Independent Regulatory Review Commission prompted the

Department to explore alternatives. In the fall of 1995, the Secretary elected to conduct a statewide survey to gather information to be used to calculate prevailing minimum wages. Accordingly, the Department entered into an agreement with Pennsylvania State University to design and conduct a statewide wage survey to determine prevailing wage rates for Pennsylvania on a county-by-county basis. In part, the survey was modeled after wage surveys performed by the United States Department of Labor to determine prevailing wages under the federal Davis–Bacon Act.[2]

On June 20, 1996, survey forms and instruction booklets were mailed to qualified construction employers throughout the state. Survey forms were distributed to others, including labor unions, upon request. Participation was voluntary and respondents were asked to provide information for privately funded contracts only, which were performed during the period from January 1, 1995, to May 31, 1996. The survey deliberately excluded all data regarding the rates paid to workers on public work projects. Survey respondents were instructed to provide "peak workweek"[3] information for each occupation. Some job classifications were combined as a single occupation. The Department adopted certain methods for the verification and approval of survey responses. For example, the Department adopted the "50% + 1 rule." Under this rule, when a majority ("50% + 1") of the workers for a craft in a county were paid an identical wage rate, whether that rate derived from a CBA or otherwise, it was used as the prevailing wage. If no single wage was paid to a majority of workers, then a weighted average based on hours worked was used to determine the prevailing wage.

---

1. The case was assigned to the writer on September 15, 1998.

2. 40 U.S.C. §276a–276a–5. *See also* Davis–Bacon Regulations, 29 C.F.R. §1.2(a)(1). Since 1931, the Davis–Bacon Act has required that the wages paid on federal public work projects equal wages paid in the project's local area on similar, private construction jobs. *California Division of Labor Standards Enforcement v. Dillingham Con-*

*struction, N.A., Inc.,* 519 U.S. 316, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997).

3. "Peak workweek is the week in which the contractor employed the greatest number of workers in each occupation. The peak workweek may be different for each occupation." (Survey form, R.R. at 17a.) A peak workweek may be contrasted with a fixed week for survey reporting.

Council filed a grievance with the Board challenging the Department's decision to initiate and utilize the survey. Numerous parties intervened in that proceeding. Initially, the Board dismissed the grievance, concluding that the matter was not ripe for adjudication because the Department had not resolved to use the survey data to determine future prevailing wage rates. While an appeal was pending before this court, on March 3, 1997, the Department began issuing wage rate determinations exclusively on the basis of the survey. On August 13, 1997, this Court issued an order remanding this matter to the Board to decide the merits of the issues raised.[4] Thereafter, the Board held hearings on remand. On December 1, 1997, the Board denied the grievance on the merits, concluding that the Secretary's decision to conduct a wage survey and the design and methodology used by the survey to gather the wage data were a reasonable exercise of his discretion under the PWA. The Board opined:

It is apparent from the record that a survey is the best, if not only way, to determine what wage rates are being paid to workers in the localities where they work. Experts in the survey field designed the Secretary's survey.... All the experts, on both sides, differed on the various aspects of the design and methodology of the survey used. The record, however, shows the Secretary's survey was designed to produce the best results possible given the language of the Act, Regulations and the voluntary nature of its response. There was and has been no alternative method offered to the Secretary to accomplish the purpose imposed by his statutory duty.... [A]buse of discretion is a relative term.... When measuring abuse of discretion we want to know if it's better or worse than the alternative.

(Board's Decision, 12–1–97, at 11–12.) This appeal followed.[5]

On appeal, the Council and MCA, its supporting intervenor, challenge generally the use of a statewide survey to determine prevailing wages, and raise several allegations of error concerning the survey's design, methodology and implementation, including the following:

- The survey improperly excluded wage data from public works projects.

- The survey utilized the notion of a "peak week" as the unit of time for which wage data was collected.

- The survey was designed to determine prevailing wages on a county-by-county basis, rather than a project-by-project basis.

- The survey was not part of a continuing program to obtain and compile wage rates.

Council also asserts that the Board capriciously disregarded competent evidence and failed to resolve various evidentiary issues.

 Our standard of review is limited to determining whether constitutional rights were violated, whether the Board committed an error of law, and whether necessary findings of fact are supported by substantial evidence.[6] Section 704 of the Administrative

---

4. *Pennsylvania State Building and Construction Trades Council v. Department of Labor and Industry* (Pa.Cmwlth., Nos. 257 and 304 C.D.1997, filed August 13, 1997).

5. Numerous intervenors have filed briefs in this matter. Supporting the Department are the Pennsylvania Local Government Conference, the Departments of General Services and Transportation, the Pennsylvania School Boards Association, Inc., and certain chapters of the Associated Builders and Contractors, Inc.

Supporting Council is the Mechanical Contractors Association of Eastern Pennsylvania, Inc (MCA). While MCA filed a notice of intervention, the record shows that MCA was a party before the Board. When a party is aggrieved by

the determination of a government agency, it must file its own petition for review, and may not seek to intervene in another party's petition for review. *See Peoples Natural Gas Co. v. Pennsylvania Public Utility Commission,* 116 Pa.Cmwlth. 512, 542 A.2d 606 (Pa.Cmwlth.1988). Therefore, we will strike MCA's notice of intervention and treat MCA as an amicus curiae.

6. Contrary to Council's assertion, the capricious disregard standard of review is inapplicable here, since both Council and the Department presented evidence during the hearings before the Board. *Czap v. Workmen's Compensation Appeal Board (Gunton Corp.),* 137 Pa.Cmwlth. 612, 587 A.2d 49 (Pa.Cmwlth.1990), *petition for allowance of appeal denied,* 527 Pa. 654, 593 A.2d 425 (1991).

Agency Law, 2 Pa.C.S. §704. Further, although our review of legal issues is plenary, our Supreme Court has recently reiterated the well-established principle that:

An interpretation by the agency charged with a statute's implementation is accorded great weight and will be overturned only if such a construction is clearly erroneous.

*Cherry v. Pennsylvania Higher Education Assistance Agency,* 537 Pa. 186, 188, 642 A.2d 463, 464 (1994); *Masland v. Bachman,* 473 Pa. 280, 290–91 n. 25, 374 A.2d 517, 522 n. 25 (1977). Similarly, "[u]nless plainly erroneous or inconsistent with the statute under which regulations were promulgated, an administrative agency's interpretation of its regulations is of controlling weight." *Concerned Residents of the Yough, Inc. v. Department of Environmental Resources,* 543 Pa. 241, 246, 670 A.2d 1120, 1122 (1995).

■ In addition, to the extent that Council's complaints relate to the manner in which the Secretary has carried out a discretionary function, unless some action of the Secretary is in direct violation of a statute or lawfully promulgated regulation, it must be judged by the abuse of discretion standard. Under that standard, we will not overturn an exercise of administrative discretion unless it is arbitrary or capricious. *Bandy v. Commonwealth,* 108 Pa.Cmwlth. 387, 530 A.2d 507, 511 (Pa.Cmwlth.1987), *petition for allowance of appeal denied,* 518 Pa. 614, 540 A.2d 535 (1988).

■ With regard to the question of whether the Secretary generally has the authority to conduct a wage survey, Section 2203 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §563, grants the Secretary the power to conduct surveys. Section 2203 provides:

The Department of Labor and Industry shall have the power to make investigations and surveys upon any subject within the jurisdiction of the department, either upon its own initiative or upon the request of an advisory board, commission or committee of the department.

Moreover, there is no question that prevailing wage rates are a "subject within the jurisdiction of the Department." Section 7 of the PWA, 43 P.S. §165–7 provides:

The Secretary shall ... determine the general prevailing minimum wage rate in the locality in which the public work is to be performed for each craft or classification of all workmen needed to perform public work contracts during the anticipated terms thereof....

Thus, because the aforementioned statutes provide for the conduct of surveys to determine prevailing minimum wage rates, the Secretary's decision to conduct a statewide wage survey was not, in itself, an abuse of discretion.

We next consider Council's contention that the Secretary's decision to exclude wage data paid on public work projects is contrary to 34 Pa.Code §9.105(d), which mandates:

(d) The Secretary will conduct a continuing program for obtaining and compiling of wage rate information and shall encourage the voluntary submission of wage rate data by contractors, contractors' associations, labor organizations, public officials and other interested parties, reflecting wage rates paid to workmen in the various types of construction in the locality. **Rates shall be determined for varying types of projects within the entire range of work performed by the building and construction industry....**

34 Pa.Code §9.105(d) (emphasis added).

When the statewide wage survey was conducted, the Secretary deliberately excluded all public works projects from the survey and collected wage data from private construction projects only.[7] This was because the Secretary believed that public works wage data was inherently unreliable, reasoning that wages paid on public works projects were fixed by government mandate, not the marketplace, and were artificially high. Hence, the theory goes, including public works wage data would distort the results of the survey.

---

**7.** The instructions accompanying the wage survey directed respondents, among other things, not to provide data on publicly funded construction projects. The Board found as fact that the

Department rejected approximately 10,000 responses that did not comply with all criteria of the survey. (Board's Decision, 12–1–97, Findings of Fact Nos. 74–76.)

However, after reviewing the record, we are convinced that the Secretary's refusal to sample public works wage rates, rather than correcting the survey, has corrupted it.

The Secretary, by excluding all public works from the wage survey and focusing solely on private projects, has failed to collect wage rate information from significant types of work within the entire range of projects performed in the building and construction industry. Public works dominate certain types of construction projects, particularly heavy highway construction [8] and sewage treatment plant construction.[9] The Secretary's decision not to gather wage information from public highway and sewage treatment projects will certainly result in prevailing wages for such new construction being calculated using data derived from small, unrepresentative types of private projects, or from a very limited sampling of private large-scale undertakings. This Court can envision scenarios where the Secretary would calculate the wages for workers building a highway using survey data that was generated by contractors who build short private roads or parking lots,[10] or set the wages for workers building a major metropolitan sewage treatment plant using data collected from contractors engaged in the construction of wastewater facilities in a private home development. Hence, the Secretary's decision not to collect information concerning these types of public works, in our view, violates the plain language of 34 Pa. Code §9.105(d) and must inevitably lead to skewed and unreliable results.

Further, although public works projects were excluded by the Secretary from the survey on the theory that the wage rates for such construction were artificially fixed by the Commonwealth, this reasoning ignores the fact that many workers involved in public projects are paid at rates set by collective bargaining agreements, and would be paid at those rates in any event because the contractors performing those projects are bound by the agreements. This was illustrated by the following testimony of Deputy Secretary Acker:

Q. ... [I]sn't it true that a number of heavy and highway projects, public heavy and highway projects, are done pursuant to collectively bargained agreements?

A. That is correct.

Q. And a number of building projects that are public are done pursuant to collectively bargained agreements?

A. Not that I'd be aware of....
Q. No private work that's equivalent to building a mass transit system in Pittsburgh or Philadelphia?
A. Not of that magnitude.
Q. Yet the wages you determined based on your survey will apply to all those kind of projects?
A. It could. It would depend upon whether or not there were Federal funds involved in that project.
Q. Assuming they were State funded or funded by a political subdivision in this Commonwealth?
A. I think that's somewhat of a broad assumption, but if that assumption were to be the case, then yes.
Q. And in those instances then based on the survey, that wages you would predetermine—
A. Right.
Q. —would be for work that is dissimilar from the project you're determining?
A. The minimum wages, yes.
Q. Those wages would be the wages based on the survey?
A. Correct.
(N.T. , 9-15-97, at 176-177; R.R. at 403a-404a.)

---

8. Michael Acker, Deputy Secretary for Work Force Development and Safety, Department of Labor and Industry, testified that no highways are constructed in the non-residential private sector and that public highway projects are unique and have no corollary in the private sector. (Notes of Testimony (N.T.), 9–15–97, at 167, and 176; Reproduced Record (R.R.) at 394a, 403a.)

9. The Board found as fact that "[m]ost sewage treatment plant work in the Commonwealth is public work." (Board's Decision, 12–1–97, Finding of Fact No. 84.)

10. Deputy Secretary Michael Acker testified that this type of situation could, in fact, occur:

Q. Can you tell us what highways are constructed in Pennsylvania in the nonresidential private sector?
A. None.
....
Q. No private highway work that's equivalent to building, say, the Pennsylvania Turnpike?
A. No.
Q. No private highway work that's equivalent to building a bridge over the Susquehanna River?

A. Yes.

Q. And in your capacity as deputy secretary ... you are aware, are you not, that employers that are parties to collectively bargained agreements must pay the wages in those agreements regardless of whether it is a prevailing wage or not?

A. That's what we are told.

Q. And that is your understanding?

A. Yes.

....

Q. ... [Y]ou excluded Public Works [from the survey]?

A. That is correct?

....

Q. You excluded it even though you knew that it was employing workers who were being paid pursuant to collectively bargained agreements?

A. Uh-huh (yes).

Q. Where wages were negotiated regardless of coverage of a Federal or State Prevailing Wage Law?

A. That is correct.

(N.T., 9–15–97, at 167–68; R.R. at 394a–95a.) Thus, when the Secretary failed to consider data from public works, he reduced the number of responses to the survey involving higher-paid union workers, despite the fact that their wages were set by a negotiated contract and would be paid even if the PWA did not exist.

■ In sum, we believe that the Secretary's decision not to include public works projects in the wage survey violates 34 Pa. Code §9.105 and has skewed the results of the survey. For those reasons, we hold that that the Secretary abused his discretion, and, therefore, reverse the order of the Board denying Council's grievance.[11]

However, we recognize that, since March 3, 1997, the Department has been issuing wage determinations based on the state-wide survey. Therefore, to prevent the disruption of projects where wages have already been determined using survey results, our order in this matter shall be prospective only. It

shall apply solely to future wage determinations and to determinations currently being decided by the Department.

### ORDER

NOW, January 11, 1999, the order of the Prevailing Wage Appeals Board is hereby reversed. This order is prospective only and shall apply only to prevailing wage determinations issued subsequent to the date of this order.

Judge SMITH concurs in the result only.

Dissenting opinion by Judge LEADBETTER.

LEADBETTER, Judge, dissenting.

I must respectfully dissent. In the survey conducted by the Secretary, wage data pertaining to public work projects was excluded because it did not reflect freely negotiated or market rates, but instead were rates arbitrarily imposed by law. If these public work projects were included in the survey, then the artificially set rates would skew its results, and impede the Secretary's efforts to implement a fundamental policy change to a more accurate system of determining those wage rates which actually are "prevailing" in the particular time and place. Under these circumstances, the exclusion of public work projects is a legitimate exercise of the Secretary's broad discretion. The majority recognizes the well-established principle that:

An interpretation by the agency charged with a statute's implementation is accorded great weight and will be overturned only if such a construction is clearly erroneous.

*Cherry v. Pennsylvania Higher Education Assistance Agency*, 537 Pa. 186, 188, 642 A.2d 463, 464 (1994). Nonetheless, it ignores the Secretary's interpretation of 34 Pa.Code § 9.105(d) in favor of that proffered by the petitioners. The language in question states that, "Rates shall be determined for varying types of projects within the entire range of work performed by the building and construction industry." The Secretary's inter-

11. Because of our disposition of this matter, we need not consider Council's remaining arguments.

pretation is that this "sentence speaks to the types of projects for which the Secretary must *issue* wage rates—not the type of projects from which he must *collect data.*" [Brief at 34, n.25] [emphasis added]. While I believe reasonable minds might differ in their reading of this provision, I cannot say that the Secretary's interpretation is less reasonable than that accepted by the majority. I certainly cannot characterize the Secretary's view as clearly erroneous.

Moreover, having interpreted the regulation to require the collection of data from "varying types of projects within the entire range of work performed in the...industry," it reads that language to mean *an adequate sample from each and every type of project within the industry.* The majority then substitutes its judgment for that of the Secretary and the Prevailing Wage Board to determine that an inadequate sample was collected with respect to two specific types of building projects—highways in the non-residential private sector and sewage treatment plants. The majority opines:

> The Secretary's decision not to gather wage information from public highway and sewage treatment projects will certainly result in prevailing wages for such new construction being calculated using data derived from small, unrepresentative types of private projects, or from a very limited sampling of private large-scale undertakings. This Court can envision scenarios where the Secretary would calculate the wages for workers building a highway using survey data that was generated by contractors who build short private roads or parking lots, or set the wages for workers building a major metropolitan sewage treatment plant using data collected from contractors engaged in the construction of wastewater facilities in a private home development.

Op. at 1143. The very language employed by the majority reflects the subjective and speculative nature of its conclusions. Even if the regulation is read to require that each subcategory of work be represented by an ade-

quate quantity of data in the survey, it is for the Secretary, not this court, to determine what is "representative" of the various types of projects. Again, even if I were persuaded that the majority had the better view of the issue, that is not the question. Rather, as the majority notes, it is whether the Secretary's determination is arbitrary or capricious. *Bandy v. Commonwealth,* 108 Pa. Cmwlth. 387, 530 A.2d 507, 511 (Pa.Cmwlth. 1987), *petition for allowance of appeal denied,* 518 Pa. 614, 540 A.2d 535 (1988). Because I do not believe that the Secretary abused his discretion, I would affirm in all respects.[1]

---

1. Moreover, even if the perceived inadequacies in the data relating to construction of major highways and sewage treatment plants amounted to an abuse of discretion, I can see no basis for overturning the Secretary's determinations of *all* prevailing wages rather than simply the prevailing wages on those two categories of projects.