**INTERNATIONAL UNION OF BRICK-LAYERS AND ALLIED CRAFT-WORKERS, Local 5 PA, Petitioner,**

v.

**PREVAILING WAGE APPEALS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 3, 2001.

Decided June 14, 2001.

Reargument Denied Aug. 22, 2001.

See also 722 A.2d. 1139.

John T. Kupchinsky, Camp Hill, for petitioner.

No appearance entered on behalf of respondent.

Peter Von Getzie, Harrisburg, for intervenor, Bureau of Labor Law Compliance.

Before FRIEDMAN, LEADBETTER, Judges, and McCLOSKEY, Senior Judge.

FRIEDMAN, Judge.

International Union of Bricklayers and Allied Craftworkers, Local 5 PA (Local 5) petitions for review of the June 20, 2000 final order of the Commonwealth of Pennsylvania, Prevailing Wage Appeals Board (PWAB) affirming the decision of the Secretary of the Department of Labor and Industry (Secretary) to uphold a March 31, 1997 determination of prevailing wage rates for the "Municipal Building and Public Works Building, North Middleton Township, Cumberland County" (Project).

On March 25, 1997, North Middleton Township (Township) requested the Secretary to determine prevailing minimum wage rates for the Project. (Stipulations, No. 1; R.R. at 176a.) Consequently, on

March 31, 1997, the Bureau of Labor Law Compliance (Bureau), the branch of the Department of Labor and Industry (Department) which acts on behalf of the Secretary to determine prevailing wage rates, issued the determination for the Project. Utilizing data collected statewide in the 1996 Pennsylvania Construction Employers Survey (1996 Survey), the Bureau specified the minimum prevailing wage rate for bricklayers at a base hourly rate of $15.65 per hour and an employee benefit rate of $3.09 per hour, for a total rate of $18.74 per hour. (Stipulations, Nos. 2, 3, 7; R.R. at 176a.) These wage rates reflect the weighted average of the hourly wage rate and hourly employee benefit rate based on hours worked in the projects considered in the 1996 Survey. (Stipulations, No. 8; R.R. at 176a.)

On July 7, 1997, pursuant to section 8 of the Pennsylvania Prevailing Wage Act (PWA),[1] which provides for challenges to prevailing wage rates of one or more crafts for specific public works projects, Local 5 and the Masonry Contractors Association of Central Pennsylvania filed a petition to review the March 31, 1997 determination with respect to the rates for bricklayers

and bricklayer apprentices employed on the Project, contending that the determined wage rates were incorrect.[2] The Secretary appointed a Department hearing examiner,[3] and a hearing was held on July 16, 1997.

At the hearing, Local 5, the Township and the Department all were represented. In support of its position, Local 5 presented testimony and documentary evidence, which consisted mainly of collective bargaining agreement (CBA) wage rates for Cumberland County.[4] (R.R. at 46a–78a.) Neither the Department nor the Township presented any evidence. After considering the evidence Local 5 presented, the hearing examiner held that Local 5 had failed to establish a prima facie case to meet its burden of proving that the prevailing wage rate should be something other than the rates in the determination. The hearing examiner also concluded that the appeal was not subject to the injunction imposed in this court's April 18, 1997 decision in *Pennsylvania State Building and Construction Trades Council, AFL–CIO v. Prevailing Wage Appeals Board,* Nos. 257 and 304 C.D.1997 (Pa.Cmwlth., filed April 18, 1997).[5] Thus, in a July 17, 1997 adjudi-

1. Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. § 165–8.

2. According to Local 5, the correct prevailing wage rates are:
   *Journeymen Bricklayers:* base hourly rate of $19.23, an employee benefit rate of $6.45, for a total rate of $25.68.
   *First Year Apprentice:* base hourly rate of $6.74, an employee benefit rate of $6.45, for a total rate of $13.19.
   *Second Year Apprentice:* base hourly rate of $9.62, an employee benefit rate of $6.45, for a total rate of $16.07.
   *Third Year Apprentice:* base hourly rate of $15.39, an employee benefit rate of $6.45, for a total rate of $21.84.

3. Pursuant to a delegation from the Secretary, a hearing examiner is authorized to exercise all duties conferred upon the Secretary under section 8 of the PWA.

4. Local 5 introduced excerpts from its CBA along with the fifteen wage surveys obtained by the Department in the 1996 Survey, showing eight non-union and seven union jobs. To establish that CBA wage rates should be the prevailing wage rate, Local 5 also introduced thirty-four wage surveys, representing union jobs, that were not included in the 1996 Survey. However, the hearing examiner found that many of these additional surveys were not relevant because they were duplicates, because they listed no project cost or listed a total cost of under $25,000, or because they reflected wages outside the 1996 Survey period. (*See* hearing examiner's Findings of Fact of July 17, 1997, Nos. 6–10, R.R. at 80a; R.R. at 27a–79a.)

5. In this unpublished, single judge opinion, Judge Doyle preliminarily enjoined the Department from further implementing any new

cation titled "Final Decision and Order of the Secretary of Labor and Industry," the hearing examiner affirmed that the prevailing minimum wage rate for bricklayers and bricklayer apprentices on the Project would be as set forth in the Secretary's/Department's March 31, 1997 determination. (R.R. at 79a–86a.)

Local 5 filed an appeal with the PWAB; however, on December 23, 1997, following oral argument and the submission of briefs, the PWAB determined that it had inadequate facts to properly exercise its scope of review. Relying on *Keystone Chapter of Associated Builders and Contractors, Inc. v. Department of Labor and Industry*, 51 Pa.Cmwlth. 586, 414 A.2d 1129 (1980), the PWAB stated that the findings did not make clear whether collective bargaining agreements should determine the prevailing wage rates because union contractors perform the majority of the construction in the relevant counties, or whether non-union wage rates should prevail as the general minimum prevailing wage rates because non-union construction dominated the industry in the relevant locality. Accordingly, the PWAB remanded the case, along with over sixty other separate section 8 appeals, for rehearing before the Secretary/hearing examiner. (R.R. at 166a.)

On January 30, 1998, in response to a motion for clarification, (R.R. at 167a–69a), the PWAB issued an order that provided limited instructions to the hearing examin-

er on how the record should be developed on remand. In that order, the PWAB directed that each party was permitted to supplement the record to offer additional evidence demonstrating that a particular construction industry, that is, union or open shop contractors, performs the majority of work in the locality so that its wages are more representative of the industry. In addition, the PWAB stated that the proceedings would be bound by any issue raised and resolved by the PWAB's December 1, 1997 decision upholding the Secretary's use of the 1996 Survey results to determine prevailing wage rates. (R.R. at 173a–74a.) This PWAB decision, approving the 1996 Survey conducted by the Department to obtain information for determining prevailing wage rates throughout Pennsylvania, was reversed by this court's decision in *Pennsylvania State Building and Construction Trades Council, AFL–CIO v. Prevailing Wage Appeals Board*, 722 A.2d 1139 (Pa. Cmwlth.1999) (*State Trades Council*), in which we held that the Secretary abused his discretion by excluding wage rate information on public works projects from the 1996 Survey.

Further proceedings were conducted by a new hearing examiner; however, no additional hearings were held.[6] On June 23, 1999, the second hearing examiner issued his "Final Decision and Order of the Secretary of Labor and Industry," again sustaining the bricklayer prevailing wage rate

---

prevailing wage rates based on the 1996 Survey. Judge Doyle limited application of the injunction, however, and did not apply it to "any case presently being litigated before the [PWAB] on an individual contract basis." (*Id.* at 12, *see* R.R. at 116a–19a.) We note that, on April 18, 1997, the present case was not being litigated before the PWAB.

6. On January 28, 1998, the new hearing examiner issued a pre-hearing conference notice informing the parties from all the remanded cases about the rehearings on the

PWAB remands. In the notice, the hearing examiner provided, *inter alia*, that by April 27, 1998, the parties are to: agree to stipulate to exhibits and other facts, supply the stipulation to the hearing examiner and indicate whether a hearing is necessary. (R.R. at 170a.) The Department and Local 5 agreed on stipulations, which this time included Department submissions, and provided them to the hearing examiner on May 11, 1998, expressing no need for a hearing. (*See* Stipulations; R.R. at 175a–77a.)

of $18.74 as set forth in the Secretary's March 31, 1997 determination and dismissing Local 5's petition to review those wage rates. (R.R. at 179a–84a.) Local 5 again appealed to the PWAB, and, on June 20, 2000, following oral argument, the PWAB issued its decision and order affirming the Secretary's final decision and order. (Local 5's brief, Appendix A.) Local 5 now appeals to this court,[7] arguing that the PWAB erred in concluding that *State Trades Council* did not apply to the present case. We agree.

In *State Trades Council*, this court reversed the PWAB's December 1, 1997 decision upholding the Secretary's use of the 1996 Survey results to determine prevailing minimum wage rates under the PWA throughout Pennsylvania.[8] The order issued in *State Trades Council* states: "This order is prospective only and shall apply only to prevailing wage *determinations issued subsequent to the date of this order [January 11, 1999]." Id.* at 1144. In this case, the hearing examiner issued his determination on June 23, 1999, more than five months after the *State Trades Council* order. The PWAB issued its determination the following year on June 20, 2000. Because these determinations were issued subsequent to January 11, 1999, the *State*

*Trades Council* decision was applicable to them, and any reliance on the 1996 Survey in making them was an error of law.

This court explained the reason for its order's prospective application in the final paragraph of the *State Trades Council* opinion. This explanation supports our holding here that *State Trades Council* was applicable in this case.

[W]e recognize that, since March 3, 1997, the Department has been issuing wage determinations based on the state-wide survey. Therefore, to prevent the disruption of projects *where wages have already been determined using survey results*, our order in this matter shall be prospective only. It shall apply solely to future wage determinations and to *determinations currently being decided by the Department.*

*Id.* at 1144. (Emphases added.) We first point out that the purpose of the prospective application was to prevent disruption of projects where wages have *already been determined.* In other words, where there had been a final determination of the prevailing wage based on the 1996 Survey so that the entities could complete the bidding process and include a prevailing wage in their contract,[9] this court precluded any

---

7. Our standard of review is limited to determining whether constitutional rights were violated, whether the PWAB committed an error of law, and whether necessary findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *State Trades Council.* Further, although our review of legal issues is plenary, we must remain aware of the well-established principle that an interpretation by the agency charged with a statute's implementation is accorded great weight and will be overturned only if such a construction is clearly erroneous. *Id.* In addition, unless some action of the Secretary directly violates a statute or regulation, we will not overturn an exercise of administrative discretion unless it is arbitrary or capricious. *Id.*

8. In doing so, we held that, although it was within the Secretary's statutory authority to conduct a survey for the purpose of setting prevailing wage rates, the Secretary abused his discretion by deliberately excluding wage data paid on public work projects from the 1996 Survey. We concluded that this omission violated the regulation at 34 Pa.Code § 9.105(d), which mandates that the Secretary collect wage rate information from significant types of work within the entire range of work performed in the building and construction industry and, thus, led to skewed and unreliable results in the 1996 Survey.

9. Sections 7 and 8 of the PWA set forth the procedures to be followed in order to obtain a final determination of prevailing wage rates. After the Secretary's initial determination un-

further challenge to the prevailing wage.[10] *See* 43 P.S. § 165–8. We also point out that our explanation clearly states the order was to apply to determinations *currently being decided* by the Department.[11]

Accordingly, because the final determination of prevailing wage rates for the Project was issued well after the January 11, 1999 order date, that wage rate determination is subject to the order's prospective application of the new rule stated in *State Trades Council.* Because the contrary position[12] simply ignores the plain language of the order in *State Trades Council,* we reverse the PWAB's order.[13]

Judge LEADBETTER dissents.

---

### ORDER

AND NOW, this 14th day of June, 2001, the order of the Prevailing Wage Appeals Board, dated June 20, 2000, is hereby reversed.

---

der section 7, a challenger may file a petition to review within ten days after publication of the particular public work contract specifications. The Secretary then has twenty days to notify all interested parties and hold a public hearing on the matter. Within ten days thereafter, the Secretary must make another determination and transmit it to the interested parties. This determination is final *unless an appeal is filed with the PWAB within ten days.* If there is an appeal, the final determination is made by the PWAB. Whenever there is a challenge, the closing date for submission of bids on the contract is extended until five days after the Secretary's or the PWAB's *final* determination and publication of the prevailing minimum wage. Moreover, the final determination by the Secretary or the PWAB, as the case may be, is given to the bidders and included in the contract. 43 P.S. § 165–8.

10. Here, of course, the prevailing wage had not been determined as of January 11, 1999. Thus, the bidding was not legally completed on that date, and a valid prevailing wage could not be included in the contract.

11. As indicated above, the Department was still in the process of deciding the prevailing wage in this case on January 11, 1999. The PWAB's determination on June 20, 2000 represented the final decision of the Department. *See* 34 Pa.Code § 213.10.

12. In concluding otherwise, the PWAB first acknowledged Pennsylvania's general rule that an appellate decision changing the law is applied to cases then pending on appeal, *Blackwell v. State Ethics Commission*, 527 Pa. 172, 589 A.2d 1094 (1991). Nevertheless, the PWAB reasoned that the only logical conclusion to be drawn from *State Trades Council's* statement regarding its prospective application was that the court intended its disposition to apply, not toward final prevailing wage rate determinations resulting from a section 8 proceeding by a hearing examiner or the PWAB but, rather, toward *predetermination* requests that will come before the Department in the future and to requests for *predeterminations* that were received but still being processed. (PWAB op. at 6.) We note that neither the opinion nor the order in *State Trades Council* speaks of wage rate *pre determinations;* rather, application of that case was limited solely to "future wage *determinations* and to *determinations* currently being decided by the Department." Similarly, the prospective order was to apply only to wage rate *determinations* issued subsequent to the order date. Clearly, had the court intended the case to apply to predeterminations, it would have used that term.

13. Because of our disposition of this issue, we need not consider the other allegations of error raised by Local 5.