INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
Local Union No. 98, Petitioner,

v.

DEPARTMENT OF LABOR AND
INDUSTRY, Prevailing Wage
Appeals Board, Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2002.

Decided Jan. 16, 2003.

Reargument Denied March 18, 2003.

Cassie R. Ehrenberg, Philadelphia, for petitioner.

Kathryn J. McDermott, Harrisburg, for intervenor, Bureau of Labor Law Compliance.

Charles F.X. Szymanski, Philadelphia, for intervenor, Communications Workers of America District 13 AFL–CIO.

BEFORE: PELLEGRINI, Judge, and MARY LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The International Brotherhood of Electrical Workers, Local Union No. 98 (Local 98) petitions for review from a decision of the Department of Labor's Prevailing Wage Appeals Board (Board). The Board upheld a decision of the Secretary of Department and Labor and Industry (Department or Secretary) setting the prevailing wage rate for telecommunications work performed for the School District of Philadelphia (District). We affirm.

The following background is relevant to this case. In 1996, pursuant to the Pennsylvania Prevailing Wage Act (Act), Act of August 15, 1961, P.L. 987, *as amended,* 43 P.S. §§ 165–1—165–17, the Secretary conducted a wage survey and reported that the rate in the collective bargaining agreement (CBA) between the National Electrical Contractors Association (NECA) and Local 98, commonly referred to as the "inside wire agreement," was the prevailing rate for electrical work performed in the Philadelphia area. The inside wire agreement also covered telecommunications work.

In 1998, Local 98 entered into a second collective bargaining agreement, commonly referred to as the "sound and communication agreement." In contrast to the $45.24 hourly rate set forth in the inside wire agreement, the sound and communication agreement contained technician rates for telecommunication work ranging from $28.82 to $33.32 per hour. Telecommunication work is covered under both the inside wire agreement and the sound and communication agreement.

The dispute in this case centers on work performed for the District beginning in 1996. At that time, the prevailing wage rate for work performed for the District was that in the inside wire agreement. In 1997, District entered into a contract with Lucent Technologies to perform telecommunication upgrades. It is undisputed, however, that the District failed to obtain the required wage determinations pursuant to its obligation under the Act and workers began to file complaints of Act violations. As such, the Bureau of Labor Law Compliance (Bureau) met with officials from the District on September 13, 2000, wherein it was agreed that the project was covered by the Act and that District would request a prevailing wage determination.

At the September 13, 2000 meeting, District presented Bureau with a copy of Local 98's sound and communication agreement, advocating use of the telecommunication technician rates contained in the document, for use in the District's project. On September 19, 2000, Bureau sent a letter to Local 98 asking its position regarding the applicability of the sound and communication agreement rates to the District's project. When Local 98 did not respond, the Bureau director placed calls to Local 98 on October 3, 2000, but was unsuccessful in reaching Local 98's business manager. On October 4, 2000, the

Bureau issued wage predeterminations containing wages and classifications identical to those contained in the sound and communication agreement.

Local 98 appealed the decision and District, Verizon Communications, and the Communications Workers of America petitioned to intervene. The Secretary appointed a hearing examiner who held a hearing on Local 98's appeal on April 4, 2001 and denied Local 98's appeal in a decision dated April 12, 2001, adopting the predetermined wage rates as the Secretary's final determination.

The Secretary's decision determined that there exists a separate classification for telecommunication workers. Although workers may have previously been paid rates under the inside wire agreement, the Secretary determined that the work presently being done at the District differed from that described in the inside wire agreement. Namely, under the inside wire agreement, much of the work was performed by electricians who traditionally worked with high voltage wiring, conduits, raceways and wire molds. Telecommunication workers do low voltage wiring for telephones and computers and have different training and certification. The decision stated that the work being done at the District controls the classification and that indeed the work being done was that of telecommunications and set the rate in the sound and communications agreement as that of the prevailing wage. Local 98 appealed to the Board, which affirmed the Secretary's decision on January 17.2002. This appeal followed. The Communications Workers of America, District 13, AFL–CIO are Intervenors.

Our review is limited to determining whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *York Excavating Co. v. Pennsylvania Prevailing Wage Appeals Board,* 663 A.2d 840 (Pa. Cmwlth.1995).

The first issue raised is whether the Board erred in affirming the Secretary's prevailing wage rate where such was determined based on a single CBA, the sound and communication agreement, rather than considering results of its own survey, other collective bargaining agreements and other information.

 Initially, we observe that the purpose of the Act is to protect workers employed on public projects from substandard pay by ensuring that they receive the prevailing minimum wage. *Butler Balancing Co. v. Department of Labor and Industry,* 780 A.2d 840, 844 (Pa.Cmwlth. 2001). Every public body that engages in the construction of a public work project must receive a determination from the Secretary as to the prevailing minimum wage rates to be paid to workers. *Pennsylvania State Building and Construction Trades Council v. Prevailing Wage Appeals Board,* 722 A.2d 1139 (Pa.Cmwlth. 1999).

 Local 98 takes issue with the Board's reasoning that "no clear guidance" exists as to which CBA governs. Assuming that there is no such guidance, the Secretary could not have chosen one CBA over another as it did in this case. Here, the Secretary should have ascertained information in determining which CBA was applicable. Pursuant to 34 Pa.Code § 9.105(d), the Secretary is required to conduct an ongoing program for determining the actual prevailing rates in any locality. Relevant portions of 34 Pa.Code § 9.105(d) provide:

The Secretary shall conduct a continuing program for obtaining and compiling of wage rate information and shall encourage the voluntary submission of wage rate data by contractors, contractors' associations, labor organizations.... If the Secretary deems that the data at hand is insufficient to make a determination with respect to the crafts or classifications ... he may have a field survey conducted ... for the purpose of obtaining additional information upon which to make a determination of the wage rates and also the customs, usages and practices as to the type of work to which the wage rates apply and the size of available force of qualified workmen....

Here, the Secretary was obligated to gather available data in determining a wage. However, the Secretary based his decision on only one CBA and as such the decision is not based on substantial evidence.

▇▇▇ Bureau responds that the Secretary considered both CBA's but nonetheless determined that the sound and communication agreement covered the work in question and Local 98 offers no authority for limiting the Secretary's ability to adopt some CBA rates but not others. The determination of prevailing wages is an act largely committed to the Secretary's legislative authorized discretion. *Keystone Chapter of Associated Builders and Contractors v. Department of Labor and Industry*, 51 Pa.Cmwlth. 586, 414 A.2d 1129, 1134 (1980). The Secretary's exercise of discretion is not subject to reversal, absent proof of fraud, bad faith or a blatant abuse of discretion. *Pennsylvania Industries for the Blind and Handicapped v. Department of General Services*, 116 Pa. Cmwlth. 264, 541 A.2d 1164 (1988). In addition, Local 98's argument that the Secretary cannot choose a CBA rate until

the Secretary conducts a survey of all CBA's does not take into consideration the Secretary's discretionary authority in conducting surveys. *Pennsylvania State Building and Construction Trades Council v. Department of Labor and Industry*, 722 A.2d 1139 (Pa.Cmwlth.1999). Here, the Secretary determined that he had sufficient information for making a wage determination and as such a survey was not necessary.

Next, Local 98 argues that the conclusion that the CBA's themselves do not state which agreement applies to which project, is also wrong. The sound and communication agreement makes itself clear that it is not applicable to the work at issue. The sound and communication agreement states that "[t]his Agreement does not apply to new construction nor to retrofits in those locals where the Inside Local Union has control of the work. When any dispute arises dealing with this question, any ruling made by the International Office of the Union shall be accepted and put into effect." It is undisputed that Local 98 performs the majority of this type of work in Philadelphia and when performing such work the inside wire agreement has been consistently applied.

We observe, however, that in accordance with 34 Pa.Code § 9.106(a), wage rates are to be determined by the actual work performed. Thus, because it was determined here that the type of work performed involved telecommunications work rather than worked performed by electricians, the inside wire agreement does not control.

Local 98 also argues that the Secretary did not encourage the submission of necessary data as required under the Act. In accordance with 34 Pa.Code § 9.105(d), the Secretary "shall encourage the submission of wage rate data...." Here, how-

ever, after District provided a copy of the sound and communication agreement, the Bureau sent a letter to Local 98's business manager requesting its input as to the applicability of the sound and communication agreement. The Bureau then phoned the business manager on October 3 and was informed he was in Rome. Nevertheless, the Bureau on the very next day set the rate as that contained in the sound and communication agreement without giving Local 98 a reasonable amount of time to respond.

We do not agree with Local 98's contention that the Secretary did not encourage the submission of wage rate data. Although Local 98 never provided the Secretary with a copy of the sound and communication agreement, such agreement was provided by District. As such, the Secretary had relevant wage rate data. Moreover, more than one attempt was made to Local 98 to find out its position as to the applicability of the sound and communication agreement.

Local 98 also points out that 34 Pa.Code § 9.105(a) provides that in determining the general prevailing wage, the Secretary is to consider wage rates established by collective bargaining agreements. Here, Local 98 argues that the Secretary only considered one CBA, that of the sound and communication agreement. Local 98

claims that the sound and communication agreement covers only 700 workers, only 300 of whom work in Philadelphia County at any one time. The Secretary erred in not considering the inside wire agreement which covers numerous more workers and other available CBA's.

Bureau again states, and we agree, that the Secretary in fact considered both CBA's and in addition properly followed scope-of-work rules. Specifically, all workers must receive prevailing minimum wages "in their respective crafts and classifications on public work", 34 Pa.Code § 9.106(a). The regulations define the term "classification" as those "[s]pecific categories of jobs which are performed within a 'craft.'" 34 Pa.Code § 9.102. The term "craft" includes those "[s]pecial skills and trades which are recognized as such by custom and usage in the building and construction industry." 34 Pa.Code § 9.102. Here, the Secretary determined that the type of work being done for District was that of telecommunications and that according to the classification and the work done the rate should be that which is contained in the sound and communication agreement.[1]

Local 98 also claims that the Board committed an error of law by applying principles of estoppel. First, estoppel applies to preclude a party from adopting, to

---

1. Intervenors argue that a telecommunications worker is a recognized job classification for purposes of the Act and as such telecommunications work should be paid at the rate governed by the applicable CBA. The question then becomes which CBA should have been used to set the rate for telecommunication workers. Intervenors maintain that it has a CBA with Verizon which covers approximately 2,000 telecommunications technicians performing the same type of duties as those performed for District. This CBA establishes a wage and benefit rate in excess of $45.00 per

hour for these 2,000 workers. Because Intervenors' CBA covers almost three times as many telecommunication workers as does the sound and communication agreement, Intervenors argue that it would have been a more appropriate measure of the prevailing wage rate. As previously stated, however, the Secretary and Board determined that the type of work performed for District was that of telecommunications and that based on the evidence presented at the hearing, the sound and communication agreement governed such work.

their detriment, a position inconsistent with prior espoused position. Local 98 maintains, however, that it has never espoused the position that the sound and communication agreement applied to the work at issue. In addition, although Local 98 failed to supply the sound and communication agreement, submission of wage rate information by a labor organization is voluntary, 34 Pa.Code § 9.105(d).

The Board's discussion concerning estoppel did not state that Local 98 could not rely on the sound and communication agreement, a position it never espoused, but instead stated that Local 98 could not complain that the Secretary deviated from historical acquiescence of its inside wire rate for telecommunications work involving Philadelphia public works projects. The Board observed that the reason the Secretary did not account for sound and communication rates previously is because Local 98 never gave a copy of the sound and communication agreement to the Secretary. Moreover, when the Secretary was formulating wage rates for these projects, Local 98 failed to respond to the Bureau's September 19, 2000 letter about the sound and communication agreement and also failed to respond to phone calls.

Finally, Local 98 argues that if equitable principles of estoppel are to be applied to Local 98, the principles must equally be applied against the District. In accordance with 43 P.S. § 165–4, it shall be the duty of every public body engaging in public work to determine the prevailing wage rate. Here, District commenced work without first determining the prevailing wage and thus violated the Act. While it is true that District commenced work without first determining the prevailing wage, this matter is elsewhere addressed because as acknowledged by Local 98, work-

ers on the District project filed complaints soon after the District project began as to this alleged violation.

In accordance with the above, the decision of the Board is affirmed.

### ORDER

Now, *January 16, 2003*, the decision of the Department of Labor's Prevailing Wage Appeals Board is affirmed.